IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MUSTAFA A. WHITFIELD,       :
                         :
        Petitioner,       :
                         :
    v.                 :      Civ. Act. No. 06-137-GMS
                         :
THOMAS CARROLL,         :
Warden, and CARL C. DANBERG,  :
Attorney General for the State of Delaware, :
                         :
        Respondents.     :

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In October 2002, the petitioner, Mustafa Whitfield, and two co-defendants, Akeem Coleman and Emmanuel Robinson, were arrested and subsequently indicted on charges of attempted robbery first degree, three counts of possession of a firearm during the commission of a felony ("PFDCF"), assault second degree, reckless endangering first degree, wearing a disguise during the commission of a felony,[1] conspiracy second degree, and possession of a deadly weapon by a person prohibited ("PDWBPP"). *See* Del. Super. Ct. Crim. Dkt. at Items 1, 2.  On January 29, 2004, a joint jury trial commenced, with each defendant represented by his own appointed attorney.  On February 6, 2004, a Delaware Superior Court jury found Whitfield (and his two co-defendants) guilty of attempted robbery first degree, assault second degree, two counts of PFDCF, reckless endangering first degree, wearing a disguise during the commission of a felony, and conspiracy second degree.  *Id.* at Item 51.  All three were acquitted of PDWBPP

---

[1] Coleman was not charged with this offense.

and one count of PFDCF. *Id.* Whitfield was subsequently sentenced to twenty-four years in prison, suspended after eleven years for decreasing levels of supervision. *Id.* at Item 63. In December 2004, Whitfield's convictions and sentence were affirmed on appeal. *Whitfield v. State*, 867 A.2d 168 (Del. 2004).

On March 8, 2005, Whitfield moved *pro se* for postconviction relief under Superior Court Criminal Rule 61. Del. Super. Ct. Crim. Dkt. at Item 95. The Superior Court summarily denied the motion and Whitfield appealed. *Id.* at Item 99. On appeal, the Delaware Supreme Court affirmed the Superior Court's decision. *Whitfield v. State*, 2005 Del. LEXIS 507 (Del. Dec. 13, 2005). Whitfield's federal habeas petition is undated, but the petition is stamped as received by the Court on February 28, 2006. D.I. 2.

<u>Facts</u>

As described by the Delaware Supreme Court in *Whitfield*, 867 A.2d at 170-71, the relevant facts leading to Whitfield's arrest and conviction were as follows:

> Anthony Meek arrived home at about 11:30 p.m. on October 14, 2002. He parked his Chevy Cavalier behind his house. While parking the car, Meek noticed three black males walking around the corner heading toward him. Two of the males had something wrapped around their faces.
>
> The three men came around the front of Meek's car while he was getting out of it. One of the men, the one without anything covering his face, was holding a black semiautomatic handgun. The gunman told Meek to "Give up the keys."
>
> When Meek began arguing, the gunman told one of the other men to grab the keys. Meek was holding the keys in his hand. As the man grabbed for the keys, Meek wrapped his arm around the man's neck and a struggle ensued. Meek tripped and the two of them fell back on the curb. The third assailant tried to pull his companion off of Meek while telling the gunman to shoot. The gunman fired toward Meek and the three would-be robbers took off running.
>
> Meek began to chase his assailants. As they were running down the street, the gunman turned and fired at Meek again. Meek immediately felt pain in his foot and gave up the chase. Meek was subsequently treated at the hospital for a gunshot wound to his foot.

At about 11:50 p.m., two Wilmington police officers spotted three black males running a few blocks away. As the police approached to question the men, two of them jumped over a six-foot high brick wall and ran away. The third man, Akeem Coleman, was stopped and a black 9mm handgun was retrieved from the sidewalk near where Coleman was taken into custody. The shell casings found near Meek's car were later shown to have been fired by that gun.

About five to ten minutes after Coleman was taken into custody, police saw two black men, one without a shirt, walking toward an apartment complex a few blocks from where the men had gone over the wall. Believing it odd that the men were not wearing coats in the cold weather and were sweating, the police suspected that these were the two men who had fled. The police stopped the two men who were identified as Mustafa Whitfield and Emmanuel Robinson. A white t-shirt found near Meek's car contained DNA that matched that of Robinson.

At trial, Whitfield testified in his own defense, explaining that he was on his way to meet a girl he had met on a chat line at an apartment building near where he was detained. Whitfield said that he had run into Robinson shortly before being approached by police. Coleman and Robinson elected not to testify.

## Discussion

Reading Whitfield's state court filings in conjunction with his petition for federal habeas relief,[2] Whitfield raises three grounds for relief: (1) Detective Stephen Misetic falsely stated in the warrant application that police positively identified Whitfield as a suspect and Misetic also misrepresented the victim's description of the suspects; (2) because Emmanuel Robinson's DNA was illegally obtained based on a warrant containing false statements, that evidence should not have been used against Whitfield; and (3) prosecutors knowingly used police reports containing false information that the police identified him. *See* D.I. 2 at 6-9; Op. Br. & Reply Br. in Del. Supr. Ct. No. 327, 2005. Whitfield has presented his claims for relief to the Delaware Supreme Court on appeal from the denial of his postconviction motion, thus exhausting his claims. *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984). Whitfield's claims, however, do not provide a basis for relief.

---

[2] *See DeShields v. Snyder*, 829 F. Supp. 676, 678 n.1 (D. Del. 1993).

**Claims 1 & 2**

Whitfield asserts that his arrest and detention were illegal because a police officer lied in his affidavit of probable cause for the arrest. Further, Whitfield contends that Robinson was also illegally arrested on the same basis and, as a result, the DNA evidence obtained as a result of Robinson's arrest should have been suppressed at their joint trial. Thus, in essence, Whitfield has raised a claim that the arrest warrant was invalid because the police knowingly included false information in their warrant application. *See, e.g., Franks v. Delaware*, 438 U.S. 154 (1978) (discussing the procedure for addressing claims of false statements or omissions in warrant applications). These are Fourth Amendment claims.

Review of Whitfield's claims of Fourth Amendment violations, however, are precluded by *Stone v. Powell*, 428 U.S. 465 (1976). *See, e.g., Hubbard v. Carroll*, 2003 WL 277252, *2 (D. Del. Feb. 5, 2003) (finding review of *Franks* claim barred by *Stone v.* Powell). If the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a federal court cannot provide habeas corpus relief review. *Stone*, 428 U.S. at 494; *see also Deputy v. Taylor*, 19 F.3d 1485, 1491 (3d Cir. 1994); *accord Reed v. Farley*, 512 U.S. 339, 347 (1994); *Withrow v. Williams*, 507 U.S. 680, 686 (1993). "A petitioner has had a full and fair opportunity to litigate a Fourth Amendment claim if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure." *Turner v. Carroll*, 2006 WL 1804601, *4 (D. Del. June 27, 2006) (citing *U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Petrillo v. New Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977)). Here, Whitfield raised his claims concerning the warrant applications in his state postconviction proceedings. *See* Del. Super. Ct. Crim. Dkt. at Item 95; Op. Br. in Del. Supr. Ct. No. 327, 2005. Although Whitfield is dissatisfied with the analysis of the state courts in deciding his claims, "even an erroneous or

incomplete state determination of a Fourth Amendment claim does not overcome the *Stone* bar; on habeas review, the focus of the *Stone* inquiry is only whether there was a structural defect in the state procedure." *Bailey v. Carroll*, 2006 WL 1431232, *3 (D. Del. May 23, 2006) (citing *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002); *Gilmore v. Marks*, 799 F.2d 51, 56-57 (3d Cir. 1986)); *see Deputy*, 19 F.3d at 1491 ("Even otherwise potentially meritorious Fourth Amendment claims are barred on habeas when the petitioner had a full and fair opportunity to litigate them."). There is nothing in the record to suggest that Whitfield's opportunity to litigate any Fourth Amendment claim in the state courts was limited; Whitfield had the opportunity to present his claims in his postconviction motion and on appeal. *See Word v. Carroll*, 2004 WL 1941342, *3 (D. Del. Aug. 31, 2004).    Accordingly, under *Stone v. Powell*, Whitfield's claims manifestly fail to provide a basis for federal habeas relief. *See Marshall v. Hendricks*, 307 F.3d 36, 81-82 (3d Cir. 2002); *Word*, 2004 WL 1941342 at *3.

Even if this Court could review Whitfield's claims, there is no basis upon which to grant relief. According to the United States Supreme Court, "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980) (citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)); *see also Vickers v. State*, 2002 WL 31107362, *7 (D. Del. Sept. 23, 2002). The only evidence Whitfield contends came as a result of the allegedly unlawful arrest is Robinson's DNA; the DNA was then matched to the t-shirt left at the scene of the crime. Whitfield has no standing to complain about Robinson's allegedly unlawful arrest or any evidence derived from that arrest. *See Wong Sun v. United States*, 371 U.S. 471 (1963) (no standing to complain about violation of another's rights); *United States v. Payner*, 447 U.S. 727 (1980) (no expectation of privacy in third person's

property). Thus, because no evidence derived from the arrest of Whitfield was admitted at trial, no relief is available in federal habeas review.

**Claim 3**

In his final claim, Whitfield asserts that prosecutors knowingly used false police reports to prepare the case against him. D.I. 2 at 9. Whitfield contends that the prosecutors should have investigated his case more thoroughly before taking him to trial. *See* Reply Br. in Del. Supr. Ct. No. 327, 2005. Whitfield has failed to make any showing that the prosecutor knew the police statements were false. In fact, by alleging that the prosecutor failed to sufficiently investigate, Whitfield implies that the prosecutor did not know that the officer's warrant application may have been misleading or false. In essence, Whitfield is complaining that he was indicted on allegedly false information supplied by police officers to the prosecutor. This claim, however, cannot provide Whitfield with relief.

Whitfield is not entitled to challenge the sufficiency of the evidence presented to the grand jury. An indictment returned by a legally constituted and unbiased grand jury is sufficient, if valid on its face, to proceed to trial on the merits. *Costello v. United States*, 350 U.S. 359, 363 (1956). A defendant is not entitled to challenge an indictment on the ground that it is not supported by adequate or competent evidence. *United States v. Calandra*, 414 U.S. 338, 344-45 (1974); *United States v. Labate*, 270 F.2d 122, 123-24 (3d Cir. 1959) (citing *Costello*, 350 U.S. at 363-64); *see also United States v. Maceo*, 873 F.2d 1, 3 (1st Cir. 1989) (stating that a court should not inquire into the sufficiency of the evidence before the indicting grand jury). There is no showing or even allegation that the grand jury was not constituted properly or had no evidence before it. Whitfield has not alleged any irregularities with his indictment; rather he only alleges that the prosecutor should not have relied on the allegedly false police reports in

6

seeking the indictment.  Because there is no federal constitutional due process requirement that requires dismissal of an indictment due to the presentation of incompetent evidence to a grand jury, Whitfield's claim is not cognizable in federal habeas review.  *See Costello*, 350 U.S. at 408-09 ("An indictment returned by a legally constituted and unbiased jury . . . , if valid on its face, is enough to call for trial of the charges on the merits.  The Fifth Amendment requires nothing more.")

## Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Whitfield's trial (January 29 & 30, 2004; February 3 & 6, 2004) have been prepared.  Whitfield's sentencing (Apr. 16, 2004) was recorded, but no transcript has been prepared.  In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available.  However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.  No affidavits were filed pursuant to Delaware Superior Court Criminal Rule 61 in this case.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/ Elizabeth R. McFarlan
Deputy Attorney General
Del. Bar. ID No. 3759
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
elizabeth.mcfarlan@state.de.us

Date:  December 21, 2006

7



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 277252 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

Briefs and Other Related Documents
Hubbard v. CarrollD.Del.,2003.Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Gregory HUBBARD, Petitioner,
v.
Thomas CARROLL, Warden, Respondent.
**No. C.A. 02-320-SLR.**

Feb. 5, 2003.

Gregory Hubbard, Smyrna, Delaware, Petitioner, pro se.
Thomas E. Brown, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, for Respondent.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

*1 Petitioner Gregory Hubbard is an inmate at the Delaware Correctional Center in Smyrna, Delaware. Currently before the court is petitioner's application for habeas corpus relief pursuant to 28 U.S.C. § 2254. (D.I.2) For the reasons that follow, the court concludes that petitioner's application is without merit and shall be denied.

II. BACKGROUND

On May 11, 2000, petitioner was convicted by jury of first degree robbery, second degree robbery, and possession of drug paraphernalia. (Cr.D.I.45) [FN1] On July 14, 2000, petitioner was sentenced to 12 years imprisonment. (Cr.D.I.49) Petitioner appealed his conviction to the Delaware Supreme Court on July 28, 2000. (Cr.D.I.51) Petitioner also filed a second appeal challenging a finding by the Superior Court that he was in violation of the terms of his probation in connection with an unrelated April 1995 first degree robbery conviction by guilty plea. (Cr.D.I.53) Because petitioner's sentences resulting from the conviction and the violation of probation were interrelated, his appeals were consolidated. On September 5, 2001, the Delaware Supreme Court affirmed both petitioner's conviction and sentence

and the violation of probation decision of the Superior Court. *Hubbard v. State,* 782 A.2d 264 (Del.2001).

> FN1. References to petitioner's Superior Court criminal docket shall be designated as "Cr. D.I." References to the civil docket in this case shall be designated "D.I."

Petitioner has now filed the current application for federal habeas relief. In his application, petitioner alleges: (1) the Delaware Supreme Court misapplied the mandate in *Franks v. Delaware* in determining his claim that a nighttime search warrant was premised on false statements was without merit; (2) a denial of his right to due process in his state proceedings due to the failure of the state to provide notice of two violation of probation ("VOP") hearings; and (3) a violation of the Confrontation Clause of the United States Constitution because the state did not disclose that Angela Benson would testify at his trial. (D.I.2) Respondent asserts that each of petitioner's claims is without merit and the application should be denied.

III. DISCUSSION

A. Petitioner's Illegal Search Claim

Petitioner first argues that the Delaware Supreme Court misapplied *Franks v. Delaware,* 438 U.S. 154 (1978) in denying his claim that a nighttime search warrant was premised on a false statement. (D.I. 2 at 4) Petitioner asserts that the detective applying for the search warrant falsely stated in his declaration that petitioner "confirmed that his address is 1307 E. 28th Street, Wilmington, Delaware." (*Id.*) On appeal, the Delaware Supreme Court assumed that the statement was false but went on to hold that since petitioner failed to challenge the accuracy of the address, the source of the address was irrelevant and, therefore, even if the source were excluded, the warrant would still contain sufficient information to support probable cause to search that address. (*Id.* at 5); *See Hubbard v. State,* 782 A.2d 264, ¶ 18 (Del.2001). Petitioner argues that under *Franks,* a defendant who challenges a warrant claiming the source of information is false does not also have to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 277252 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

challenge the veracity of the information given by the allegedly false source. (D.I. 2 at 5)

*2 Respondent argues that review of petitioner's illegal search claim is precluded by *Stone v. Powell,* 428 U.S. 465 (1976). (D.I. 11 at 5) In *Powell,* the Court held

that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

428 U.S. at 494. Respondent notes that on March 31, 2000, the Superior Court conducted a suppression hearing on petitioner's motion challenging the warrant. The Delaware Supreme Court then reviewed and affirmed the Superior Court's ruling denying the motion, thus, petitioner had an opportunity for full and fair litigation of his claim in the state courts. (D.I. 11 at 6)

The court agrees with respondent. Even if petitioner's claim has merit, a federal court may not review the claim if the petitioner had a full and fair opportunity to litigate the claim in state court. *See Deputy v. Taylor,* 19 F.3d 1485, 1491 (3d Cir.1994) ("Even otherwise potentially meritorious Fourth Amendment claims are barred on habeas when the petitioner had a full and fair opportunity to litigate them."). Since the undisputed record shows that petitioner has had the opportunity to challenge the warrant in both the trial court and on appeal, this court may not review petitioner's claim on the merits.

B. Petitioner's Due Process Claim

In his second claim, petitioner argues that the state deprived him of due process by not notifying him of two VOP hearings. (D.I. 2 at 8) On April 20, 1995, petitioner pled guilty to a charge of first degree robbery. (D.I. 2 at 9) He was sentenced to five years in prison which was suspended after serving the statutory minimum two years, with the balance to be served on probation. (*Id.*) On April 27, 2000 at a VOP hearing, the Superior Court held that petitioner's bank robbery charges in the current case amounted to a violation of his probation.

Petitioner contends that he was not notified or allowed to be present at the April 27, 2000 VOP hearing which amounts to a due process violation under the Fourteenth Amendment. (*Id.*) Respondent

argues that the Delaware Supreme Court addressed these arguments on appeal and dismissed them on procedural grounds under Supreme Court Rule 8 for failure to present the arguments at trial. [FN2] (D.I. 11 at 7) By applying the procedural bar of Rule 8, the Court articulated a "plain statement" under *Harris v. Reed,* [FN3] that its decision rested on adequate and independent state law grounds. Therefore, respondent contends that under *Wainwright v. Sykes,* [FN4] federal habeas review would be improper unless petitioner has shown cause for his procedural default and resulting prejudice.

> FN2. Delaware Supreme Court Rule 8 provides that "[o]nly questions that have been fairly presented to the trial court may be reviewed [on appeal]."

> FN3. 489 U.S. 255, 263-64 (1989).

> FN4. 433 U.S. 72 (1977).

The respondent's position is supported by the caselaw. In its opinion, the Delaware Supreme Court stated "Hubbard did not raise this claim below; therefore, we review it for plain error." *Hubbard v. State,* 782 A.2d 264, ¶ 32 (Del.2001). The Court then applied the plain error test, which provides that the Court "will generally decline to review contentions not raised and not fairly presented to the trial court for decision. The failure to object at trial usually constitutes a waiver of a defendant's right to raise the issue on appeal unless the error is plain." *Probst v.. State,* 547 A.2d 114, 119 (Del.1988). In determining whether an error is plain, the Court stated that
*3 [u]nder the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.

*Id.* at n. 5 (internal citations omitted). The Court then concluded that petitioner and his counsel had notice of the VOP hearing and, in fact, petitioner's counsel appeared at the hearing and raised no objection to the hearing on the ground of inadequate notice. *Hubbard,* 782 A.2d at ¶ 32. As such, the Court concluded that there was no plain error and petitioner's claim was precluded by Rule 8. *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 277252 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

This court has consistently held that Rule 8 is an independent and adequate state procedural rule which precludes federal habeas review. *See Lawrie v. Snyder,* 9 F.Supp.2d 428, 452-53 (D.Del.1998); *Dawson v. Snyder,* 998 F.Supp. 783, 825 (D.Del.1997); *Lazano v. Snyder,* 1996 U.S. Dist. LEXIS 12418, *14-15 (D.Del. Aug. 12, 1996). Therefore, petitioner's due process claim is not reviewable by this court.


### C. Petitioner's Confrontation Clause Claim

In his third claim, petitioner argues that the State violated his Sixth Amendment Confrontation Clause right and his Fourteenth Amendment due process rights by failing to give him notice that the State would be calling a "key witness," Angela Brown, during his trial and failed to disclose potential impeachment evidence about her. (D.I. 2 at 12) He asserts that the State purposely and intentionally failed to disclose that Benson had been forced to cooperate with police or she would be incarcerated and lose her children and her home. (*Id.* at 13)

Petitioner presented this issue for the first time on direct appeal to the Delaware Supreme Court. In addressing these arguments the Court stated that "Hubbard points to no credible evidence to substantiate this conclusory allegation. Furthermore, the record reflects that defense counsel had the opportunity to cross-examine Angela Benson fully on the issue of her cooperation with police and on any other aspect of potential bias." *Hubbard, supra,* at ¶ 21. The allegations in petitioner's habeas application are similarly conclusory and devoid of any credible evidence substantiating such claims. Courts in this circuit have held that bald assertions and conclusory allegations do not entitle a petitioner to habeas relief. *See Mayberry v. Petsock,* 821 F.2d 179, 185-86 (3d Cir.1987); *DeShields v. Snyder,* 830 F.Supp. 819, 823-24 (D.Del.1993). Furthermore, as the Delaware Supreme Court noted, petitioner had a full and fair opportunity to cross-examine the witness at trial and test her credibility. Therefore, in the absence of any credible support for petitioner's claim in the record, his application fails to show a basis for habeas relief.


### IV. CONCLUSION

**\*4** For the reasons set forth above, the court finds that petitioner's claims for habeas corpus relief under 28 U.S.C. § 2254 are either procedurally barred or otherwise fail on the merits. Therefore, the court will dismiss the petition for habeas corpus relief with prejudice and deny the writ. Additionally, the court finds no basis upon which to issue a certificate of appealability. An appropriate order shall issue.


### ORDER

At Wilmington this 5th day of February, 2003, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Petitioner's application for habeas relief pursuant to 28 U.S.C. § 2254 (D.I.2) is dismissed and the writ denied.

2. The court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2003.
Hubbard v. Carroll
Not Reported in F.Supp.2d, 2003 WL 277252 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:02CV00320 (Docket) (Apr. 30, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2006 WL 1804601 (D.Del.)
(Cite as: Slip Copy)

Briefs and Other Related Documents
Turner v. CarrollD.Del.,2006.Only the Westlaw
citation is currently available.
United States District Court,D. Delaware.
Brian TURNER, Petitioner,
v.
Thomas CARROLL, Warden, and Carl C. Danberg,
Attorney General of the State of Delaware,
Respondents.
**No. Civ.A. 04-1561-KAJ.**

June 27, 2006.

Brian Turner. Petitioner, pro se.
Elizabeth R. McFarlan, Deputy Attorney General,
Delaware Department of Justice, Wilmington,
Delaware. for Respondents.

MEMORANDUM OPINION
JORDAN, J.

I. INTRODUCTION

**\*1** Petitioner Brian Turner ("Turner") is incarcerated
at the Delaware Correctional Center in Smyrna,
Delaware. Turner filed the pending petition for a writ
of habeas corpus under 28 U.S.C. § 2254. For the
reasons discussed, I will dismiss his petition. (D.I.1)

II. PROCEDURAL AND FACTUAL
BACKGROUND

On May 2, 2002, the police were called to investigate
a shooting at a residence owned by Turner's sister,
which was located on Bunche Boulevard in
Wilmington, Delaware. Upon their arrival, the police
found one homicide victim inside the residence and
one homicide victim outside. Witnesses told the
police that three men in a gray vehicle drove up to the
residence and fired a weapon, striking the two
victims. Turner was staying with his sister at the time
of the shooting, but he was not a suspect in the crime.

On May 6, 2002, while investigating the homicides,
the police discovered that one of the victims may
have been in possession of a gun at the time of the
shooting. Based on this information, the police
applied for and obtained a warrant to search the

Bunche Boulevard address for firearms and
ammunition. When they arrived at the residence, the
police encountered Turner, and informed him that
they were there to search the residence. Turner asked
if he could put on his pants, and the police responded
affirmatively. Turner became very nervous once his
pants were on, causing the police to search him. The
police found cocaine in the pants, and they also found
a bag with more cocaine under the rear shed, along
with numerous personal documents bearing Turner's
name. The police arrested Turner, and thereafter, a
grand jury issued an indictment charging him with
trafficking 50-100 grams of cocaine (Del.Code Ann.
tit. 16, § 4753A) and maintaining a dwelling for
keeping a controlled substance (Del.Code Ann. tit.
16, § 4755).

Prior to trial, Turner moved to suppress the evidence
against him. The Superior Court denied the motion
after conducting a suppression hearing. Turner then
stipulated to the facts of the case. A Delaware
Superior Court judge, sitting without a jury,
convicted Turner of trafficking in cocaine, and the
State entered a *nolle prosequi* on the maintaining a
dwelling charge. The Superior Court sentenced
Turner to seven years of incarceration, suspended
after five years for probation. *See Turner v. State,*
826 A.2d 289, 290 (Del.2003). Turner appealed, and
the Delaware Supreme Court affirmed his conviction
and sentence. *Id.*

In December 2003, Turner filed a *pro se* motion for
post-conviction relief pursuant to Delaware Superior
Court Criminal Rule 61 ("Rule 61 motion"), which
the Superior Court denied. The Delaware Supreme
Court affirmed the Superior Court's judgment on
post-conviction appeal. *Turner v. State,* 2004 WL
1535764 (Del. July 6, 2004).

Turner filed the pending application for federal
habeas relief. (D.I.1) The State filed an Answer,
contending that the application should be dismissed
because the claims fail to warrant federal habeas
relief. (D.I.12)

**\*2** Turner's habeas petition is ready for review.

III. LEGAL PRINCIPLES

A. Exhaustion and procedural default

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1804601 (D.Del.)
(Cite as: Slip Copy)

Page 2

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Prior to seeking habeas relief from a federal court, a petitioner in custody pursuant to a state court judgment must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). To satisfy the exhaustion requirement, a petitioner must demonstrate that the substance of the federal habeas claim was "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry,* 513 U.S. 364, 365 (1995); *Castille v. Peoples,* 489 U.S. 346, 351 (1989); *Lambert v. Blackwell,* 134 F .3d 506, 513 (3d Cir.1997). If the highest state court "clearly and expressly" refused to review the merits of a claim due to an independent and adequate state procedural rule, the claim is considered exhausted but procedurally defaulted. *See Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

A federal court may not consider the merits of a procedurally defaulted claim unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claim. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999); *Coleman,* 501 U.S. at 750-51; *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir.1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner demonstrates actual prejudice by showing "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a

"constitutional violation has probably resulted in the conviction of one who is actually innocent," a federal court may excuse a procedural default to prevent a fundamental miscarriage of justice. *Murray,* 477 U.S. at 496; *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.2001). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). To establish actual innocence sufficient to demonstrate a miscarriage of justice, a petitioner must assert "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Hubbard v. Pinchak,* 378 F.3d 333, 339-40 (3d Cir.2004).

B. Standard of review under AEDPA

**\*3** If a federal habeas claim is exhausted and not procedurally defaulted, and the highest state court adjudicated its merits, then the federal court can only grant habeas relief if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir.2001). A state court adjudicated a claim on the merits for the purposes of 28 U.S.C. § 2254(d) if the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn,* 355 F.3d 233, 247 (3d Cir.2004) (internal citations omitted), *rev'd on other grounds by Rompilla v. Beard,* 545 U.S. 375 (2005).

AEDPA also requires a federal court to presume that a state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. *Id.; Miller-El v. Cockrell,* 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

both explicit and implicit findings of fact. *Campbell v.. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000).

## IV. DISCUSSION

Turner asserts three claims for relief in his habeas petition: (1) his conviction was the result of evidence seized pursuant to an unconstitutional search and seizure because there was no probable cause for the search warrant; (2) the state courts failed to consider all the facts in determining that the search warrant was valid; and (3) counsel provided ineffective assistance by failing to argue at trial and on appeal that the police used false information in the warrant affidavit and also misled the magistrate.

### A. Claims one and two are barred under *Stone v. Powell*

Claims one and two allege violations of the Fourth Amendment. In his first habeas claim, Turner contends that the search warrant lacked probable cause because the "affidavit [supporting the warrant application] did not identify either the source of the information or the source's reliability." (D.I. 3 at 6-7) In his second claim, Turner contends that the state courts did not consider all the relevant facts in upholding the search warrant, namely, that the May 6th search warrant was the second search warrant and the police already discovered a gun during their May 2nd investigation. (D.I. 3 at 11-13)

*4 Pursuant to *Stone v. Powell,* 428 U.S. 465, 494 (1976), federal courts cannot provide habeas review of a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *See also Wright v. West,* 505 U.S. 277, 293 (1992) ("We have also held ... that claims under *Mapp* [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review."). A petitioner has had a full and fair opportunity to litigate a Fourth Amendment claim if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure. *See U.S. ex rel. Hickey v. Jeffes,* 571 F.2d 762, 766 (3d Cir.1978); *Petillo v. New Jersey,* 562 F.2d 903, 906-07 (3d Cir.1977). A petitioner can avoid application of the *Stone* bar on habeas review only by demonstrating the existence of a structural defect in the state system which prevented the state

courts from fully and fairly hearing his Fourth Amendment claim. *Marshall v. Hendricks,* 307 F.3d 36, 82 (3d Cir.2002).

In the instant situation, Turner filed a pre-trial suppression motion, arguing that the search warrant was invalid because the information which formed the basis for the warrant was stale and non-specific, and also because there was nothing illegal about the gun which was the object of the warrant. The Superior Court conducted an evidentiary hearing and denied the suppression motion. On direct appeal, Turner argued that the object of the search was improper, the warrant lacked probable cause, and the information in the warrant affidavit was stale. The Delaware Supreme Court rejected Turner's arguments and affirmed the Superior Court's judgment. Based on this record, I conclude that the Delaware courts provided Turner with an adequate forum to present his Fourth Amendment claims.

Nevertheless, Turner attempts to demonstrate that he was denied a fair and full opportunity to litigate his claims in state court by pointing to two errors he says were perpetuated by the Delaware Supreme Court in its decision affirming the Superior Court's denial of the suppression motion. First, he contends that the Delaware Supreme Court did not analyze the issue of probable cause under the doctrines announced in *Illinois v. Gates,* 462 U.S. 213 (1983) and *Zurcher v. Stanford Daily,* 436 U.S. 547 (1978). However, this argument fails to overcome the *Stone* bar because an erroneous or incomplete state court determination of a Fourth Amendment claim does not demonstrate the existence of a structural defect in the state procedure used to review Fourth Amendment claims. *Marshall,* 307 F.3d at 82; *see also Gilmore v. Marks,* 799 F.2d 51, 56-7 (3d Cir.1986).

Turner also argues that he was denied a full and fair opportunity to litigate his Fourth Amendment claims because the Delaware Supreme Court did not expressly consider the fact that the May 6th warrant was the second warrant issued within a four-day period or the fact that the police retrieved a gun from the residence on May 2nd. (D.I.3) However, the transcript of the suppression hearing demonstrates that the prosecutor informed the Superior Court about the first warrant issued on May 2nd as well as the discovery of a gun on that same day. In turn, these facts were part of the record upon which the Delaware Supreme Court based its decision affirming the Superior Court's judgment. I therefore conclude that the Delaware Supreme Court's failure to explicitly discuss the May 2nd warrant or gun

discovery does not demonstrate that the state courts failed to provide Turner with a "full and fair opportunity" to litigate the issue. Accordingly, I will deny Turner's two Fourth Amendment claims as barred by *Stone.*

**\*5** I also note that I am precluded from reviewing claim two because it is procedurally defaulted. After the Superior Court denied his Rule 61 motion, Turner filed a motion for reconsideration, arguing that the trial court failed to consider the fact that the warrant in question was the second search warrant and that the police had already obtained a gun from the residence. However, Turner filed a notice of appeal soon after filing the reconsideration motion, causing the Superior Court to summarily dismiss the reconsideration motion for lack of jurisdiction. Turner did not raise the factual omissions in his post-conviction appeal, and the Delaware Supreme Court explicitly stated that "[t]o the extent Turner has not argued other grounds to support his appeal that were previously raised, those grounds are deemed waived and will not be addressed by this Court." *Turner,* 2004 WL 1535764, at \*1.

Here, by explicitly stating that previously argued claims were waived due to Turner's failure to raise the claims on post-conviction appeal, the Delaware Supreme Court plainly stated that its decision rested on state law grounds. *Harris v. Reed,* 489 U.S. 255, 263-265. (1989). This court has consistently held that Delaware's waiver rule constitutes an independent and adequate state ground precluding federal habeas review. *See McLaughlin v. Carroll,* 270 F.Supp.2d 490, 512 (D.Del.2003); *Carter v. Neal,* 910 F.Supp. 143, 151-52 (D.Del.1995). Therefore, claim two is procedurally defaulted, and even if the claim were somehow cognizable, I cannot review its merits absent a showing of cause for the procedural default and actual prejudice resulting therefrom, or that a miscarriage of justice will result in the absence of such review. *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991).

Turner does not allege any reason for his failure to present claim two to the Delaware Supreme Court in his appeal of his Rule 61 motion. In the absence of cause, I will not address the issue of actual prejudice. Turner also has not presented any colorable evidence of his actual innocence. Thus, he has failed to demonstrate that a miscarriage of justice will occur if I decline to review this claim.

Accordingly, in addition to dismissing claim two as barred by *Stone,* I conclude that claim two is

procedurally barred from federal habeas review due to Turner's procedural default of the claim in state court.

### B. Claim three does not warrant relief under § 2254(d)(1)

In Claim Three, Turner alleges that counsel provided ineffective assistance at trial and on appeal by failing to argue that the police used false information in the warrant that misled the magistrate into issuing the second warrant. Turner exhausted state remedies for this claim by presenting it to the Delaware Supreme Court on post-conviction appeal. The Delaware Supreme Court affirmed the Superior Court's denial of the claim as meritless. Consequently, pursuant to § 2254(d)(1), federal habeas relief will only be available if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.[FN1]

> FN1. The *Stone* bar does not apply to ineffective assistance of counsel claims premised on an attorney's failure to raise Fourth Amendment issues. *Kimmelman v. Morrison,* 477 U.S. 365 (1986).

**\*6** The clearly established federal law governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington,* 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith,* 539 U.S. 510 (2003). Under the first *Strickland* prong, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland,* 466 U.S. at 688. The second *Strickland* prong requires the petitioner to demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. When, as here, the petitioner premises his ineffective assistance of counsel claims on his counsel's alleged failure to competently litigate Fourth Amendment issues, the petitioner demonstrates actual prejudice by proving "the Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman,* 477 U.S. at 375.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1804601 (D.Del.)
(Cite as: Slip Copy)

It is well-settled that a petitioner has the burden of proving the facts in support of his ineffective assistance claim. *Sistrunk v. Vaughn,* 96 F.3d 666, 671 (3d Cir.1996); *Wells v. Petsock,* 941 F.2d 253, 259-260 (3d Cir.1991). The petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells,* 941 F.2d at 259-260; *Dooley v. Petsock,* 816 F.2d 885, 891-92 (3d Cir.1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland,* 466 U.S. at 689.

In Turner's case, the Delaware Supreme Court analyzed the instant ineffective assistance of counsel claim within the *Strickland* framework, and concluded that counsel did not perform deficiently because Turner's contentions regarding the allegedly false information provided by the police and prosecutor were conclusory and unsupported by the record. *Turner,* 2004 WL 1535764, at *1. The Delaware Supreme Court also determined that any alleged failure by counsel to raise these issues did not cause prejudice to Turner. *Id.*

The Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, *Strickland.* During the suppression hearing, the prosecutor stated that:
Subsequent to the May 2nd execution of [the first] warrant [the affiant] spoke to the defendant himself who says I live here, and Earl Rose told me about a gun being wrapped up in the back of my property, talked to Earl Rose who says the gun you guys got is not the gun that was on the victim. I was present during the shooting. I live at that place. And, in fact, that guy had a gun, the victim had a gun. You guys did not find it, but he had a gun.

*7 (D.I. 13, App. to Appellant's Op. Br. in *Turner v. State,* No.621,2002, at A11) Turner contends that the affiant's statement was untrue, and that counsel provided ineffective assistance by failing to challenge the veracity of the statement. However, as in his state court proceedings, Turner fails to offer any evidence to support his contention that the affiant lied. Without any concrete factual support, Turner cannot demonstrate prejudice under *Strickland.*

Perhaps in an effort to explain the absence of such proof, Turner alleges that his counsel prohibited him from testifying during the suppression hearing. Even if Turner's allegation is true, the record reveals that the Superior Court did not base its denial of the

suppression motion solely on the affiant's statement; rather, the Superior Court's denial was premised on a combination of the evidence presented during the suppression hearing, the search warrant application, and the papers filed. (D.I. 13, App. to Appellant's Op. Br. in *Turner v. State,* No.621,2002, at A12) Thus, I conclude that Turner has failed to demonstrate prejudice because he cannot show that his testimony denying the affiant's statement would have changed the outcome of the suppression hearing.

Accordingly, I will dismiss claim three because it does not warrant relief under § 2254(d)(1).

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Additionally, if a federal court denies a habeas claim on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find the following debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

I conclude that Turner's habeas petition must be dismissed, because his claims are either procedurally barred from federal habeas review or they do not warrant relief under § 2254(d)(1). Reasonable jurists would not find these conclusions debatable. Consequently, I decline to issue a certificate of appealability.

## VI. CONCLUSION

For the foregoing reasons, I conclude that Turner's § 2254 petition does not warrant federal habeas relief. I also find no basis for issuing a certificate of appealability. An appropriate order will follow.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                Page 1
Slip Copy, 2006 WL 1431232 (D.Del.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Bailey v. CarrollD.Del.,2006.Only the Westlaw
citation is currently available.
United States District Court,D. Delaware.
Edmund F. BAILEY, Petitioner,
v.
Thomas L. CARROLL, Warden, Respondent.
**No. Civ.A. 05-002-JJF.**

May 23, 2006.

Edmund F. Bailey, Petitioner, pro se.
Gregory E. Smith, Deputy Attorney General of the
Delaware Department of Justice, Wilmington,
Delaware, for Respondent.

*MEMORANDUM OPINION*
FARNAN, J.
**\*1** Pending before the Court is an Application For A
Writ Of Habeas Corpus Pursuant To 28 U.S.C. §
2254 ("Petition") filed by Petitioner Edmund F.
Bailey. (D.I.1.) For the reasons discussed, the Court
will dismiss the Petition and deny the relief
requested.

### I. FACTUAL AND PROCEDURAL
### BACKGROUND

In July 2000, an informant told the Delaware State
Police that Petitioner and a co-conspirator rented a
locker in a self-storage facility and used the locker to
store laboratory supplies to make methamphetamine,
as well as the finished product itself. With the
consent of the storage facility's management, the
police set up a video surveillance camera in the
corridor opposite the locker used by Petitioner and
his co-conspirator. On September 11, 2000, the
management telephoned police to inform them that a
man identifying himself as the co-conspirator had just
paid the current month's rent and had visited the
locker. Police then viewed the surveillance videotape,
which showed Petitioner, not his co-conspirator, open
the locker, and transfer "a granular or leafy
substance" from one large zip-lock bag to a smaller
bag. With this information, the police applied for and
received a warrant to search the locker. (D.I. 8,
State's Ans. Br. in *Bailey v. State,* No. 495,2002, at 4-
6.)

Inside the locker, the police found a significant
amount of marijuana, scales and other drug
paraphernalia, chemicals used in the manufacture of
methamphetamine, and a loaded handgun. Based on
that information, police applied for and received a
warrant to search Petitioner's residence. At
Petitioner's residence, the police found additional
chemicals,         cutting        agent,        marijuana,
methamphetamine, paraphernalia, and another loaded
handgun. Petitioner was arrested at the scene and
charged with various drug and weapons offenses. *Id.*

Following a bench trial in the Delaware Superior
Court, Petitioner was convicted on April 25, 2002 of
two counts of possession of a firearm during the
commission of a felony, two counts of possession of
a deadly weapon by a person prohibited, attempted
manufacture of methamphetamine, possession of
methamphetamine, possession of marijuana with
intent to deliver, two counts of maintaining a building
for keeping controlled substances, possession of
marijuana, and possession of drug paraphernalia. The
Superior Court sentenced Petitioner to a total of
twenty-three years of incarceration, suspended after
fourteen years, to be followed by decreasing levels of
probation.

Petitioner asserted two claims on direct appeal: (1)
the evidence seized from a self-storage locker and
from his house should have been suppressed because
the video surveillance of the locker was illegally
obtained without a warrant; and (2) there was
insufficient evidence to support some of the weapons
convictions. On January 24, 2003, the Delaware
Supreme Court affirmed Petitioner's convictions and
sentences. *See Bailey v. State,* 2003 WL 193540 (Del.
Jan. 24, 2003).

**\*2** Petitioner filed a *pro se* motion for post-
conviction relief pursuant to Delaware Superior
Court Criminal Rule 61 ("Rule 61 motion"), raising
three claims: (1) the evidence seized from the storage
locker and his home should have been suppressed
because the police did not obtain a warrant
authorizing the video surveillance of the locker; (2)
counsel improperly waived Petitioner's preliminary
hearing; and (3) counsel provided ineffective
assistance during Petitioner's trial. In December
2004, the Superior Court denied the Rule 61 motion.
*State     v.     Bailey,     2004     WL     2914320*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(Del.Super.Ct.2004). Petitioner appealed that decision, and the Delaware Supreme Court dismissed the appeal for failure to prosecute. *Bailey v. State,* 871 A.2d 1127 (Table), 2005 WL 850415 (Del. Apr. 11, 2005).

On January 3, 2005, Petitioner filed the instant Petition through counsel. (D.I.1.) Respondent filed an Answer, asserting that the Petition should be dismissed for failing to present a claim cognizable on federal habeas review. (D.I.6.) Petitioner filed a Response challenging Respondent's argument. (D.I.13.)

## II. DISCUSSION

A district court can entertain a state prisoner's application for federal habeas relief only on the ground that his custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Additionally, a federal court cannot review a habeas petition on the merits unless the petitioner has exhausted his remedies under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842-44 (1999); *Picard v. Connor,* 404 U .S. 270, 275 (1971). A petitioner satisfies the exhaustion requirement by presenting his claim to the state's highest court, either on direct appeal or in a post-conviction proceeding. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999); *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997).

In his sole habeas claim, Petitioner contends that the evidence seized from his self-storage unit and his house should have been suppressed because the video surveillance of the locker was obtained without a search warrant in violation of the Fourth Amendment. As a general rule, federal courts cannot provide habeas review of a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *Stone v. Powell,* 428 U.S. 465, 494 (1976); *see also Wright v. West,* 505 U.S. 277, 293 (1992)("We have also held that claims under *Mapp* [evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review.") The "full and fair opportunity to litigate" requirement is satisfied if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure. *See U.S. ex rel. Hickey v. Jeffes,* 571 F.2d 762, 766 (3d Cir.1978); *Petillo v. New Jersey,* 562 F.2d 903, 906-07 (3d Cir.1977). To avoid the *Stone* bar, a petitioner must

demonstrate that a structural defect in the state system prevented the state courts from fully and fairly hearing his Fourth Amendment claim. *Marshall v. Hendricks,* 307 F.3d 36, 82 (3d Cir.2002).

**\*3** Petitioner presented the instant claim to Delaware Supreme Court on direct appeal, thereby exhausting state remedies. Although Petitioner recognizes the general applicability of the *Stone* bar to Fourth Amendment issues, he contends that the Court can review his Fourth Amendment claim because of the failure of the Superior Court to consider the caselaw cited in his suppression motion, which demonstrates that the state court did not fairly and fully litigate his Fourth Amendment claim. (D.I.13.)

Contrary to Petitioner's argument, however, even an erroneous or incomplete state court determination of a Fourth Amendment claim does not overcome the *Stone* bar; on habeas review, the focus of the *Stone* inquiry is only whether there was a structural defect in the state procedure. *Marshall,* 307 F.3d at 82; *see also Gilmore v. Marks,* 799 F.2d 51, 56-7 (3d Cir.1986). The record in Petitioner's case demonstrates the absence of any structural defect in the state procedure provided to review his Fourth Amendment claim. Petitioner filed a pre-trial motion to suppress the evidence seized, arguing that the video surveillance of the locker violated his Fourth Amendment right to privacy. The Superior Court held an evidentiary hearing on the motion. During the hearing, the court viewed the surveillance videotape. A police officer testified about the circumstances surrounding the video surveillance and subsequent seizure of evidence, as well as the physical set up of the lockers. Petitioner also testified at the hearing, providing his version of the facts as well as his opinion as to the extent of privacy afforded in the locker situation. *See generally* (D.I. 8, Appendix to Appellant's Op. Br. in *Bailey v. State,* No. 495,2002, at A-46 to A-51.)

In its written opinion denying the suppression motion, the Superior Court reviewed the facts established at the evidentiary hearing under prevailing law, and held Petitioner did not have a reasonable expectation of privacy because he failed to close the locker door. The Superior Court also specifically rejected at least one case cited by Petitioner. On direct appeal, the Delaware Supreme Court affirmed that decision.

Based on the record before it, the Court concludes that Petitioner was afforded a full and fair

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

opportunity to litigate his Fourth Amendment claim in the Delaware state courts. Accordingly, Petitioner's argument fails to overcome the *Stone* bar, and the Court will deny Petitioner's Fourth Amendment claim.

## III. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

*4 The Court has concluded that *Stone v. Powell,* 428 U.S. 465 (1976) precludes habeas review of Petitioner's Fourth Amendment claim. Reasonable jurists would not find this conclusion to be debatable. Therefore, the Court declines to issue a certificate of appealability.

## IV. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be denied.

An appropriate Order will be entered.

## *ORDER*

At Wilmington, this *23* day of May, 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Petitioner Edmund F. Bailey's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (D.I.1) is *DISMISSED,* and the relief requested therein is *DENIED.*

2. The Court declines to issue a certificate of appealability because Petitioner has failed to satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2006.
Bailey v. Carroll
Slip Copy, 2006 WL 1431232 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:05cv00002 (Docket) (Jan. 3, 2005)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d
2004 WL 1941342 (D.Del.)
**(Cite as: 2004 WL 1941342 (D.Del.))**

Page 1

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Clarence WORD, Petitioner,
v.
Thomas CARROLL, Warden, and Attorney General of the
State of Delaware,
Respondents.
**No. Civ.A.03-538 JJF.**

Aug. 31, 2004.
Clarence Word, Smyrna, Delaware, Petitioner, pro se.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware
Department of Justice, Wilmington, Delaware, for
Respondents.

*MEMORANDUM OPINION*
FARNAN, J.

**\*1** Petitioner Clarence Word is an inmate at the Delaware
Correctional Center in Smyrna, Delaware. Currently before
the Court is the Petition For Writ Of Habeas Corpus
pursuant to 28 U.S.C. § 2254 filed by Petitioner. (D.I.1.) For
the reasons set forth below, the Court will dismiss the
Petition and will not issue a certificate of appealability.

## BACKGROUND

In 1999, Petitioner was indicted on charges of possession
with intent to deliver heroin and use of a dwelling for
keeping controlled substances. Following a trial by jury in
Delaware Superior Court, Petitioner was found guilty on
both charges. The Superior Court sentenced Petitioner to
five years mandatory imprisonment on the possession
conviction and two years, suspended with decreasing levels
of supervision, for the use of a dwelling conviction.

Following his conviction, Petitioner sought to appeal
various issues from his trial. Based upon a disagreement
regarding appealable issues with appointed counsel
(hereinafter "Defense counsel"), Petitioner sought leave to

pursue his direct appeal without representation. The
Superior Court conducted a hearing regarding this request
and concluded that Petitioner's waiver of his right to
representation for appeal was done knowingly, voluntarily,
and intelligently. *See State v. Word,* 2001 WL 755938
(Del.Super.Jan. 9, 2001). On June 19, 2001, the Delaware
Supreme Court denied Petitioner's claims of error and
affirmed his convictions. Subsequently, Petitioner filed a
motion for post-conviction relief, which was denied by the
Superior Court and affirmed by the Delaware Supreme
Court. *Id.; Word v. State,* 825 A.2d 239, 2003 WL
21241336 (Del. May 27, 2003).

## STANDARD OF REVIEW

A district court may consider a habeas petition filed by a
state prisoner only "on the ground that he is in custody in
violation of the Constitution or laws or treaties of the United
States." 28 U.S.C. § 2254(a). Before a court may reach the
merits of a habeas petition, it must first determine whether
the requirements of the Antiterrorism and Effective Death
Penalty Act of 1996 ("AEDPA") are satisfied. The AEDPA
provides:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State
> court shall not be granted unless it appears that
>
> (A) the applicant has exhausted the remedies available in
> the courts of the State; or
>
> (B)(i) there is an absence of available State corrective
> process; or (ii) circumstances exist that render such
> process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Prior to seeking habeas relief, a state petitioner must exhaust
the remedies available in the state courts. To satisfy this
requirement, a petitioner must demonstrate that the claim
was fairly presented to the state's highest court, either on
direct appeal or in a post-conviction proceeding. *Lambert v.
Blackwell,* 134 F.3d 506, 513 (3d Cir.1997) (citations
omitted). This exhaustion principle is predicated on
principles of comity in order to ensure that state courts have
the initial opportunity to review federal constitutional
challenges to state convictions. *Werts v. Vaughn,* 228 F.3d
178, 192 (3d Cir.2000) (citing *Caswell v. Ryan,* 953 F.2d
853, 857 (3d Cir.1992)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2004 WL 1941342 (D.Del.)
**(Cite as: 2004 WL 1941342 (D.Del.))**

Page 2

*2 A petitioner fairly presents a claim to the state's highest court for purposes of exhaustion by asserting a legal theory and facts that are substantially equivalent to those contained in the federal habeas petition. *Doctor v. Walters,* 96 F.3d 675, 678 (3d Cir.1996) (citing *Bond v. Fulcomer,* 864 F.2d 306, 309 (3d Cir.1989)). Additionally, fair presentation requires the petitioner to raise the claim in a procedural context in which the state courts will consider it on the merits. *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

If a petitioner has exhausted his state remedies, the AEDPA also prescribes the standard by which a court may review the merits of a habeas claim. In relevant part, the AEDPA provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d).

The United States Supreme Court has interpreted Section 2254(d) to require courts to review state court convictions under two independent inquiries. A federal court must decide whether the state court's decision was 1) "contrary to," or 2) involved an "unreasonable application" of, clearly established Supreme Court precedent. *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000). [FN1] To be considered "clearly established," the relevant legal rule must be included in the holding of a decision by the Supreme Court, and not merely dicta, and exist at the time of the state court's decision. *Id.* at 412.

> FN1. In *Williams,* Justice O'Connor, writing for the majority, held that a state court decision may be considered "contrary to" Supreme Court precedent in one of two ways. First, a state court's decision will be contrary to Supreme Court precedent if it

reaches a conclusion that is opposite to that reached by the Supreme Court on a question of law. *Id.* at 405. Additionally, a state court decision will be contrary to established Supreme Court precedent if the state court is faced with facts "materially indistinguishable" from a relevant Supreme Court precedent yet comes to an opposite conclusion. *Id.*

In interpreting "unreasonable determination," Justice O'Connor did not provide a precise definition of the term, but held that an "unreasonable determination" is not the equivalent of an "incorrect" application of Supreme Court precedent. *Id.* at 410. Further, Justice O'Connor stated that although it is difficult to define the term "unreasonable," federal judges are familiar with its meaning. *Id.* at 410. Thus, an "unreasonable determination" within the meaning of Section 2254(d) will occur when a state court unreasonably applies Supreme Court precedent to the facts of the case before it. *Id.* at 409.

### DISCUSSION
I. Parties' Contentions

By his Petition, Petitioner asserts six grounds for relief: 1) the search and seizure of the heroin from his mother's residence was conducted in violation of the Fourth Amendment; 2) the chain of custody for the heroin was broken and the drugs admitted into evidence were tampered with; 3) the Superior Court abused its discretion by failing to give the jury curative instructions following Officer DiClementi's testimony about Petitioner's past drug use and shoplifting charge; 4) ineffective assistance by Defense counsel; 5) Defense counsel failed to search for legal errors for appeal; and 6) the Superior Court incorrectly concluded that Petitioner knowingly and voluntarily waived his right to counsel for appeal.

Respondents contend that Petitioner's first claim presents a Fourth Amendment issue that cannot be raised on collateral review. With respect to Petitioner's second claim, Respondents contend that this is a question of state evidentiary law and does not present a federal constitutional issue. Respondents further contend that Petitioner's second

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2004 WL 1941342 (D.Del.)
(Cite as: 2004 WL 1941342 (D.Del.))

Page 3

claim and third claim should be denied because Petitioner did not comply with state procedural requirements. Next, Respondents contend that Petitioner's fourth claim, ineffective assistance of trial counsel, is unavailing because Petitioner cannot rebut the presumption that his counsel's representation was reasonable or that he suffered prejudice as a result of the representation. Respondents maintain that Petitioner's fifth claim fails because counsel is not required to proceed with a frivolous appeal merely to satisfy his or her client. Respondents contend that Petitioner's sixth claim also fails because he knowingly and voluntarily waived his right to the assistance of counsel. Respondents state that Petitioner exhausted his state remedies on all of the claims raised by his Petition.

II. Decision

A. *Illegal Search and Seizure*

*3 Petitioner's first claim alleges that the search and seizure of the drugs in his mother's residence was unconstitutional because it was carried out without a valid warrant, there was no written consent to search prior to the search, and any verbal consent obtained from his mother was procured through deception. On direct appeal and in a post-conviction relief motion, the Delaware Supreme Court and the Superior Court, respectively, rejected Petitioner's Fourth Amendment claim.

The Supreme Court in *Stone v. Powell,* 428 U.S. 465 (1976), held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494-95. On the record before it, the Court finds no evidence that Petitioner was denied the opportunity to file a pretrial motion to suppress. Rule 41 of the Delaware Superior Court Rules of Criminal Procedure provides that a defendant may file a pretrial motion to suppress evidence; however, Petitioner did not file any such motion. Additionally, Petitioner raised this claim on direct appeal and in a post-conviction relief motion and it was rejected by both courts. Accordingly, the Court concludes that Petitioner had a full and fair opportunity to

litigate his first claim, and therefore, the Court will deny Petitioner's claim pursuant to *Stone v. Powell.*

B. *Chain of Custody*

By his second claim, Petitioner asserts that his Fourteenth Amendment and Due Process rights were violated because the State failed to properly establish a chain of custody for the heroin seized in his mother's residence and introduced at trial. Specifically, Petitioner contends that the heroin was tampered with and that there is a discrepancy between the weight of the heroin in the medical examiner's report and the police report.

In response, Respondents contend that, although Petitioner exhausted this claim, the Court should not reach its merits because Petitioner is procedurally barred by his failure to object to the State's establishment of the chain of custody at trial.

When reviewing a habeas petition, a federal court will not address a claim under federal law if, when the claim was presented to the state courts, the state courts rejected the claim on a ground that was both independent and adequate. *Cabrera v. Barbo,* 175 F.3d 307, 312 (3d Cir.1999). A refusal by a state court to address a federal claim for failure to meet a state procedural rule is both independent and adequate. *Id.* (citing *Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991)). In the instant case, the Delaware Supreme Court held that Petitioner raised this claim for the first time on appeal, and therefore, would only be reviewed for plain error. *Word,* 2001 WL 762854, at * *3.

The Delaware Supreme Court's holding that Petitioner failed to raise this claim at trial, and subsequent review only for "plain error" pursuant to Delaware Supreme Court Rule 8, is an independent and adequate state law ground procedurally barring this claim. *McLaughlin v. Carroll,* 270 F.Supp.2d 490, 517-18 (D.Del.2003) (citing *Lawrie v. Snyder,* 9 F.Supp.2d 428, 452-54 (D.Del.1998)). Thus, unless Petitioner can demonstrate 1) cause for the procedural default and actual prejudice; or 2) a fundamental miscarriage of justice, the Court may not consider the merits of Petitioner's chain of custody claim. *Id.* at 501 (citations omitted).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2004 WL 1941342 (D.Del.)
(Cite as: 2004 WL 1941342 (D.Del.))

Page 4

**\*4** Petitioner alleges that he has demonstrated cause to excuse his procedural default because the state did not turn over the medical examiner's report until minutes before trial began. Even accepting Petitioner's allegations of prosecutorial misconduct as true, the Court concludes that Petitioner cannot demonstrate actual prejudice. A petitioner can demonstrate actual prejudice by showing "not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier,* 477 U.S. 478, 494 (1986) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original)).

In this case, Petitioner's allegation of an improper chain of custody derives from discrepancies between the weight of the drugs in the medical examiner's report and the police report. However, the Court concludes that any such discrepancy is irrelevant, and thus cannot establish actual prejudice, because the two charges that Petitioner was convicted of, 16 Del. C. §§ 4751, 4755(a)(5), were not contingent on any specific weight of heroin.

The Court also concludes that Petitioner has not demonstrated a fundamental miscarriage of justice. To establish a fundamental miscarriage that will excuse a procedural default, a petitioner must show that " 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." ' *Cristin v. Brennan,* 281 F.3d 404, 420 (3d Cir.2002) (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)). The miscarriage of justice inquiry is concerned with actual innocence and not legal innocence. *Id.* (citing *Sawyer v. Whittley,* 505 U.S. 333, 339 (1992)).

Petitioner's assertion of a miscarriage of justice is also based on the discrepancies between the medical examiner's report and the police report. Apart from the fact that Petitioner's assertion of error is based on state law, which generally will not result in the grant of habeas relief, *see Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) (stating that "federal habeas corpus relief does not lie for errors of state law") (citing *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Rose v. Hodges,* 423 U.S. 19, 21-22 (1975) (*per curiam* ), the Court is not persuaded that such discrepancies would preclude any

reasonable juror from finding him guilty beyond a reasonable doubt on the charges for which he was convicted, particularly because his convictions were not reliant on any specific weight of heroin. Accordingly, the Court concludes that Petitioner has not made an adequate showing to excuse his procedural default.

C. *Absence of Curative Instruction*

The Court concludes that it must also deny Petitioner's third claim for relief. Petitioner contends that the Superior Court committed constitutional error by not giving the jury a curative instruction following Defense counsel's elicitation of testimony about Petitioner's history of drug use and a shoplifting charge. Respondents contend that this claim is procedurally barred because Petitioner made no objection to this testimony at trial.

**\*5** As an initial matter, the Court agrees with Respondents that Petitioner's third claim is procedurally barred. In its Order, the Delaware Supreme Court reviewed Petitioner's claim pursuant to the "plain error" standard that it applied to all of the claims Petitioner had not preserved for appeal. *See Word,* 2001WL 762854, \* \*2-3. Thus, in order to excuse this procedural bar, Petitioner must demonstrate cause and actual prejudice or a miscarriage of justice. *See McLaughlin,* 270 F.Supp.2d at 517-18.

The Court concludes that Petitioner has not demonstrated that the procedural bar should be excused. First, Petitioner has asserted no objective external factor that precluded him from objecting to the absence of a curative instruction. Certainly, any such objection would have been unusual, as it was Defense counsel who elicited the testimony Petitioner now complains of. Additionally, the Court is not persuaded that no reasonable juror would have convicted Petitioner of the crimes charged if they had not heard testimony about his past drug use and shoplifting charge. *Cristin,* 281 F.3d at 420. [FN2] Accordingly, Petitioner is procedurally barred from advancing his claims.

> FN2. In further support of this conclusion is the trial testimony of Detective Rodriguez. Detective Rodriguez testified that, in response to questioning, Petitioner admitted that the heroin found in his

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2004 WL 1941342 (D.Del.)
(Cite as: 2004 WL 1941342 (D.Del.))

mother's residence was his and that he sold it for $15 a bag. (April 13, 2000 Trial Transcript at 77-78.)

Moreover, even if the Court were to assume that the Delaware Supreme Court did not provide a plain statement that Petitioner was procedurally barred from raising this claim, the Court agrees with the rationale of the Delaware Supreme Court and finds that Petitioner suffered no constitutional injury by the Superior Court's decision not to give a curative instruction. *Word,* 2001 WL 762854, * *3. The testimony Petitioner now complains of was elicited by Defense counsel. (D.I. 3 at A-159.) In addition, the Superior Court, following this elicitation by Defense counsel, removed the jury and engaged in a colloquy with Defense counsel regarding the prejudicial nature of this testimony. *Id.* at A-153-55, 160-63, 156-59. Defense counsel did not request a curative instruction from the Superior Court judge and instead decided to clarify the earlier testimony with further questioning before the jury. Defense counsel informed the Superior Court that his elicitation of this testimony was part of his trial strategy. (D.I. 3 at A-153-55, 160-63, 156-59.) Based on this record, the Court concludes that the Superior Court's decision not to give the jury a curative instruction was not in error, and consequently, not contrary to, nor did it involve, an unreasonable application of clearly established law.

### D. *Ineffective Assistance of Counsel*

Petitioner's fourth claim, ineffective assistance of counsel, is premised on various alleged deficiencies in Defense counsel's representation, including: 1) failure to investigate and adequately prepare for trial, including the decision not to retain an expert witness; 2) failure to file a motion to suppress and a motion to request immunity for Petitioner's brother; 3) failure to object to preserve issues for appeal; and 4) opening the door to bad character evidence.

**\*6** In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court established the standard for reviewing ineffective assistance of counsel claims. In order for a petitioner to succeed on such a claim, he or she must establish that: 1) defense counsel's performance was deficient; and 2) but for this deficient performance, the

result of the proceeding would have been different. *Id.* at 687, 694. When evaluating performance, review must be highly deferential and courts must, to the extent possible, view the performance without "the distorting effects of hindsight." *Id.* at 689. Further, a petitioner must identify specific errors in counsel's representation and courts should recognize a strong presumption that counsel's performance was adequate. *Id.* at 690.

### 1. *Character Evidence*

As discussed above, Defense counsel "opened the door" to Petitioner's past drug use and shoplifting charge in Petitioner's case in chief. Petitioner contends that this action was unreasonable and negatively colored the jurors' evaluation of his character. After a review of the trial record, the Court concludes that Defense counsel's decision to open the door to this evidence was a trial strategy within his discretion.

In a colloquy with the Superior Court outside the presence of the jury, Defense counsel informed the judge that he engaged in this line of questioning to support the defense theory that Petitioner was a probationer, and therefore, the drugs discovered by the police were likely not his because, as a probationer, he would be randomly tested for drug use. (D.I. 3 at A-153-55, 160-63, 156-59.) Because this was a strategy decision made by Defense counsel at trial, based on controlling precedent granting wide latitude for such decisions, *Strickland,* 466 U.S. at 689, the Court concludes that Defense counsel's opening the door to this evidence does not establish the first prong of the *Strickland* test. [FN3]

> FN3. The Court concludes that Petitioner's claim that Defense counsel erred by not calling an expert witness to present testimony that a heroin "user could use countless bags [of heroin] a day" must be rejected on similar grounds. The decision of what witnesses to call at trial is within the bounds of the broad discretion granted to counsel that a reviewing court will not second guess without persuasive evidence (which Petitioner has not provided) that an attorney abused that discretion.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2004 WL 1941342 (D.Del.)
(Cite as: 2004 WL 1941342 (D.Del.))

Page 6

### 2. *Decision Not to File Motions and Not to Preserve Issues for Appeal*

With respect to Petitioner's assertion that Defense counsel's representation was unreasonable because he failed to file a motion to request immunity for Petitioner's brother, the Court finds this claim to be without merit. Petitioner maintains that had the Superior Court granted such a motion, his brother would have testified that the drugs were his.

Aside from the incentive to commit perjury that such a grant of immunity would provide to a witness, the Court is unaware of any authority providing that a trial judge should grant immunity under the circumstances of this case. Accordingly, the Court concludes that Petitioner has not established that Defense counsel's decision not to file a motion for immunity was unreasonable.

Next, the Court concludes that Defense counsel's decision not to file a motion to suppress was also reasonable. In a letter memorandum and affidavit to the Superior Court, Defense counsel stated that he did not file a motion to suppress because the Petitioner's mother had given consent to a search of her residence. (D.I.3, Ex. A.) At trial, Petitioner's mother testified that, although she did not sign a written consent for the search, she gave the officers verbal consent. (D.I. 3 at A-82-83.) Based on this testimony, Defense counsel believed that filing a motion to suppress would be frivolous. On this record, the Court concludes that Defense counsel's decision not to file a meritless suppression motion was reasonable. *See United States v. Brown,* 2003 WL 277256, *3 (D.Del. Feb. 5, 2003)(recognizing that "it is not ineffective assistance of counsel to fail to raise a meritless claim")(citing *Strickland,* 466 U.S. at 691).

*7 Petitioner also asserts that Defense counsel's failure to object to the testimony about his shoplifting charge violated his constitutional rights because it deprived him of the opportunity to appeal the introduction of this testimony. The Court must also reject this claim because it was Defense counsel who elicited this testimony, and therefore, he could not have objected to his own actions. [FN4]

FN4. Additionally, Petitioner contends that Defense counsel's representation was unreasonable because he did not search the record for issues to appeal. Petitioner has not, however, provided any support for this assertion. Further, a review of the exhibits in the appendix to his brief in support of the writ of habeas corpus persuade the Court that Defense counsel reviewed the trial record and in good faith believed that there were no non-frivolous issues for appeal. (D.I. 3 at A-191, Ex. A.) Based on these facts, the Court concludes that Petitioner has not established that Defense counsel's search for appealable issues was unreasonable.

### 3. *Inadequate Preparation and Investigation*

Petitioner's remaining ground of inadequate preparation by Defense counsel relates to his decision not to interview any of the State's witnesses. In a letter memorandum and affidavit Defense counsel sent to the Superior Court, Defense counsel argues that he decided not to interview the State's witnesses because "[t]here was no need to contact the State's witnesses[; he] had their reports." (D.I.3, Ex. A.) Additionally, Defense counsel states that "[t]he record will show that all of the State's witnesses were effectively cross examined." *Id.*

The Court is surprised by Defense counsel's assertion that, even without interviewing any of the State's witnesses, he was able to conduct "effective" cross-examinations. However, even if the Court is to assume that Defense counsel's decision not to interview the State's witnesses was unreasonable, *see Nealy v. Cabana,* 764 F.2d 1173, 1177 (5th Cir.1985) ("[A]t a minimum, counsel has the duty to interview potential witness and to make an independent investigation of the facts and circumstances of the case.") (citations omitted), the Court concludes that Petitioner has not established the second prong of the *Strickland* test.

The prejudice identified by Petitioner based on Defense counsel's decision not to interview the State's witnesses is Defense counsel's decision not to file a motion to suppress the fruits of the search of his mother's residence. However, as discussed above, the Court concludes that Petitioner's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2004 WL 1941342 (D.Del.)
**(Cite as: 2004 WL 1941342 (D.Del.))**

Page 7

mother's consent justified Defense counsel's decision not to file a motion to suppress. And, as Petitioner cannot establish that this evidence was admitted in error, the Court must deny the claim of ineffective assistance due to Defense counsel's lack of preparation and investigation.

E. *Waiver of Appellate Counsel*

On December 19, 2000, the Superior Court held a hearing to determine whether Petitioner's request to waive counsel and proceed *pro se* on appeal was voluntary and intelligent. After questioning Petitioner about his request, the Superior Court found that he was aware of the dangers of his decision and granted Petitioner's request. (Transcript of Superior Court Hearing on December 19, 2000 ("Super.Ct.Tr.") at 14.) Petitioner contends that this decision by the Superior Court violated his constitutional rights because the Superior Court never inquired into why he wanted to proceed *pro se.*

When a defendant requests to proceed without representation on appeal, the waiver of counsel must be made knowingly and intelligently. *Swenson v. Bosler,* 386 U.S. 258, 260 (1967); *Faretta v. California,* 422 U.S. 806, 835 (1975); *United States v. Rundle,* 295 F.Supp. 613, 615 (E.D.Pa.1969)(quoting *Swenson,* 386 U.S. at 260). In the Third Circuit, if a defendant seeks new counsel or, in the alternative, to represent him or herself, a court must conduct a two-part inquiry. *Government of the Virgin Islands v. James,* 934 F.2d 468 (3d Cir.1991)(citing *United States v. Welty,* 674 F.2d 185, 187-88 (3d Cir.1982), and *McMahon v. Fulcomer,* 821 F.2d 934, 942 (3d Cir.1987)). [FN5] First, a court must decide if a defendant's request for substitute counsel constitutes good cause and justifies a continuance of trial in order to appoint new counsel. Second, if good cause is not shown, a defendant has the choice of continuing with existing counsel or proceeding *pro se.* If a defendant chooses to proceed without counsel, a court must inquire into whether the waiver was knowingly and intelligently made. *United States v. Welty,* 674 F.2d 185, 188 (3d Cir.1982).

> FN5. Although *Welty* was decided on a direct appeal from a conviction in the district court, the Third Circuit has held that the *Welty* two-party inquiry also applies to federal habeas review of

state court proceedings. *Bulh v. Cooksey,* 233 F.3d 783, 798 n. 17 (3d Cir.2000)(citing *Piankhy v. Cuyler,* 703 F.2d 728, 731 n. 3 (3d Cir.1983)).

*8 As in *James,* in the instant case Petitioner did not request substitute counsel. Nevertheless, the Court must determine whether the Superior Court conducted at least a minimal inquiry into the basis for Petitioner's objection to counsel. *James,* 934 F.2d at 471. Although the Superior Court never directly asked Petitioner whether he desired substitute counsel for his direct appeal, a review of the record persuades the Court that the Superior Court's colloquy with Petitioner at the December 19, 2000, hearing was sufficient to determine that good cause for substitution of counsel did not exist.

Good cause for substitute counsel may be shown if a defendant can demonstrate "a conflict of interest, a complete breakdown of communication or an irreconcilable conflict with his attorney." *James,* 934 F.2d at 471 (citing *Welty,* 674 F.2d at 188). During his colloquy with the Superior Court judge, Petitioner stated that he and Defense counsel did not see "eye to eye" on various issues at trial and that he disagreed with Defense counsel that he had no appealable issues of merit. (Super. Ct. Tr. at 6-8.) Petitioner advised the Superior Court that he believed the search of his mother's residence was "illegal," and therefore, constituted a valid issue for appeal. (Super. Ct. Tr. at 6-9.) [FN6]

> FN6. Petitioner also stated that he believed his Sixth Amendment rights were violated because Defense counsel was not present at a hearing where he believed the court ruled that he was not entitled to know the identity of a confidential informant. Petitioner did not, however, present this issue in the instant habeas petition, and therefore, the Court presumes that Petitioner subsequently decided that this Sixth Amendment claim was without merit. Accordingly, the Court concludes that the fact that Petitioner stated that he planned to file an appeal based on this issue does not qualify as good cause for substitute counsel.

Based on the Petitioner's statements to the Superior Court regarding why he desired to proceed *pro se,* the Court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                      Page 8
2004 WL 1941342 (D.Del.)
**(Cite as: 2004 WL 1941342 (D.Del.))**

concludes that the Superior Court's inquiry was sufficient to determine that good cause for substitution of counsel did not exist. *See James,* 934 F.2d at 471 (holding that a petitioner's failure to advance any reason that would constitute good cause, along with the petitioner's desire to terminate his present counsel for lack of enthusiasm and his unfavorable view of counsel's legal abilities were sufficient to determine that good cause did not exist). As in *James,* in this case Petitioner did not advance any reason that would constitute good cause for substitute counsel. Moreover, as discussed above, the Court has concluded that Petitioner's illegal search claim is without merit because Petitioner's mother gave oral consent for the search. Thus, the Court concludes that Petitioner's disagreement with Defense counsel about whether his appeal had merit did not constitute "good cause" for substitute counsel.

With respect to the second *Welty* inquiry, whether the waiver was knowing and intelligent, the Court concludes that the Superior Court's finding that Petitioner's waiver was knowing, voluntary, and intelligent, was not contrary to, nor did it involve, an unreasonable application of clearly established law. During its colloquy with Petitioner, the Superior Court inquired: 1) whether Petitioner desired to proceed *pro se* on his direct appeal; 2) whether Petitioner was indigent; 3) whether Petitioner believed he had an adequate understanding of the appeal process; 4) whether Petitioner had consulted with any other person, including an attorney, regarding his decision; 5) the reason why Petitioner wanted to proceed without Defense counsel; and 6) whether Petitioner believed he could properly prosecute his appeal and raise important issues. (Super. Ct. Tr. at 4-14.) After listening to Petitioner's answers and the reasons for his request to proceed *pro se,* the Superior Court stated that it was "satisfied" that Petitioner was aware of the dangers and consequences of his decision. Super. Ct. Tr. at 14.

**\*9** On this record, the Court concludes that the Superior Court's decision to permit Petitioner to proceed *pro se* was not "contrary to," nor did it involve an unreasonable application of, clearly established law that his waiver of counsel be knowing and intelligent. *See Williams,* 529 U.S. at 404-05. The Superior Court correctly advised Plaintiff of

the procedural difficulties he might face on appeal and the dangers surrounding his decision. *See* Super. Ct. Tr. at 10-14. Accordingly, the Court will deny Petitioner's claim.

*F. Certificate of Appealability*

Finally, the Court must determine whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. Pursuant to 28 U.S.C. § 2253(c)(2), a petitioner is entitled to a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." The Supreme Court has interpreted "substantial showing" to mean whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' ' *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893, n. 4 (1983) (inner quotations omitted)).

For the reasons set forth in this Memorandum Opinion, the Court concludes that Petitioner has not made the requisite showing of a denial of a constitutional right. Accordingly, the Court will not issue a certificate of appealability.

### CONCLUSION
For the reasons discussed, the Court will dismiss the instant Petition and deny the relief requested therein. Additionally, the Court will not issue a certificate of appealability.

An appropriate Order will be entered.

### ORDER
At Wilmington, this 31st day of August, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1) The Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (D.I.1), filed by Petitioner Clarence Word is *DISMISSED,* and the relief requested therein is *DENIED;*

2) The Court declines to issue a certificate of appealability

Westlaw.

Not Reported in F.Supp.2d
2004 WL 1941342 (D.Del.)
**(Cite as: 2004 WL 1941342 (D.Del.))**

Page 9

for failure to satisfy the standard set forth in 28 U.S.C. §
2253(c)(2).

2004 WL 1941342 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV00538 (Docket) (Jun. 04, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31107362 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Briefs and Other Related Documents
Vickers v. DelawareD.Del.,2002.Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Dontá E. VICKERS, Petitioner,
v.
STATE of Delaware, Robert Snyder, Warden, and M. Jane Brady, Attorney General of the State of Delaware, Respondents.
**No. Civ.A.00-131-GMS.**

Sept. 23, 2002.

### MEMORANDUM AND ORDER
SLEET, J.
*1 Following a jury trial in the Delaware Superior Court, Dontá E. Vickers was convicted of first degree robbery. The Superior Court sentenced Vickers to eight years in prison suspended after five years for decreasing levels of supervision. Vickers is currently incarcerated at the Delaware Correctional Center in Smyrna, Delaware. He has filed with the court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the court will deny Vickers' petition.

### I. BACKGROUND

On December 3, 1997, petitioner Dontá Vickers and Shavell Miller entered the Jolly Time Arcade in the Dover Mall. The attendant on duty was Randy Farrow. Vickers approached Farrow, held out a twenty-dollar bill, and asked for change. As Farrow took money from his pouch to make change, Vickers hit him in the face and slapped the money from his hand. An off-duty attendant, Dave Wardwell, saw what occurred, and grabbed Vickers by his coat. Miller attempted to pull Wardwell from Vickers, while Vickers shed his coat and fled on foot. Wardwell and a security guard chased Vickers, but by the time they caught up to him, other security personnel had restrained him. Back at the arcade, a Dover police officer retrieved Vickers' coat from Miller, and found $169 in cash in one of the pockets.

Based on these events, Vickers was charged by information with one count of first degree robbery. After a two-day trial, the jury found Vickers guilty as

charged. The Superior Court sentenced Vickers on July 24, 1998, to eight years imprisonment, suspended after five years for one year at a halfway house followed by three years probation. On direct appeal, the Delaware Supreme Court concluded that the appeal was "wholly without merit and devoid of any arguably appealable issue," and affirmed. *Vickers v. State,* No. 358, 1998, 1999 WL 89276, * *3 (Del. Jan. 8, 1999).

Vickers then filed in the Superior Court a motion for postconviction relief pursuant to Rule 61 of the Superior Court Rules of Criminal Procedure. In his Rule 61 motion, Vickers alleged that: (1) the Superior Court lacked jurisdiction because he did not waive prosecution by indictment; (2) counsel rendered ineffective assistance in several respects; and (3) the police illegally detained him for more than six hours before charging him. (D.I.7.) The Superior Court found that Vickers had waived prosecution by indictment and consented to prosecution by information, and rejected his jurisdictional argument on the merits. *State v. Vickers,* 1999 WL 1427767, *2 (Del.Super.Ct. Sept. 9, 1999). The Superior Court then summarily dismissed Vickers' two remaining claims as "entirely conclusory." *Id.* at *3. On appeal, the Delaware Supreme Court first ruled that Vickers had abandoned his claim of illegal detention by failing to raise it on appeal. *Vickers v. State,* No. 431, 1999, 2000 WL 140108, * *1 (Del. Jan. 31, 2000). The Delaware Supreme Court then concluded that the Superior Court had jurisdiction over Vickers' case because he knowingly waived prosecution by indictment and consented to prosecution by information. *Id.* Finally, the Delaware Supreme Court agreed with the Superior Court's decision to summarily dismiss as conclusory Vickers' claims of ineffective assistance of counsel. *Id.* at * *2.

*2 Vickers has now filed with the court the current petition for federal habeas relief.

### II. LEGAL PRINCIPLES

#### A. Exhaustion and Procedural Default

Pursuant to the federal habeas statute:
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31107362 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

State court shall not be granted unless it appears that
-
(A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Grounded on principles of comity, the requirement of exhaustion of state court remedies ensures that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000), *cert. denied,* 532 U.S. 980 (2001).

To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). Although a state prisoner need not "invoke extraordinary remedies" to satisfy exhaustion, he must fairly present each of his claims to the state courts. *Id.* at 844-45. Generally, federal courts will dismiss without prejudice claims that have not been properly presented to the state courts, thus allowing petitioners to exhaust their claims. *Lines v. Larkins,* 208 F.3d 153, 159-60 (3d Cir.2000), *cert. denied,* 531 U.S. 1082 (2001). A mixed petition, *i.e.,* one containing both exhausted and unexhausted claims, must be dismissed for failure to exhaust. *Rose v. Lundy,* 455 U.S. 509, 510 (1982); *Lambert v.. Blackwell,* 134 F.3d 506, 513 (3d Cir.1998).

If a claim has not been fairly presented, and further state court review is procedurally barred, the exhaustion requirement is deemed satisfied because further state court review is unavailable. *Lines,* 208 F.3d at 160. Although deemed exhausted, such claims are nonetheless procedurally defaulted. *Id.* Additionally, where a claim was presented to a state court, but the state court refused to consider it for failure to comply with an independent and adequate state procedural rule, the claim is considered procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts,* 228 F.3d at 192. Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Lines,* 208 F.3d at 160.

In order to demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner may establish cause, for example, by showing that the factual or legal basis for a claim was not reasonably available or that government officials interfered in a manner that made compliance impracticable. *Werts,* 228 F.3d at 193. Additionally, ineffective assistance of counsel constitutes cause, but only if it is an independent constitutional violation. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000). In addition to cause, a petitioner must establish actual prejudice, which requires him to show "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray,* 477 U.S. at 494.

**\*3** Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards,* 529 U.S. at 451; *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.2001). The miscarriage of justice exception applies only in extraordinary cases "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. To establish actual innocence, a petitioner must satisfy the "extremely high burden" of showing that it is more likely than not that no reasonable juror would have convicted him. *Sweger v. Chesney,* 294 F.3d 506, 522-23 (3d Cir.2002)(citing *Schlup v. Delo,* 513 U.S. 298, 329 (1995)).

### B. Standards of Review

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
-
(1) resulted in a decision that was contrary to, or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31107362 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A federal court may issue a writ of habeas corpus under § 2254(d)(1) only if it finds that the state court decision on the merits of a claim either was contrary to clearly established federal law, or involved an unreasonable application of clearly established federal law. *Williams v. Taylor,* 529 U.S. 362, 412 (2000).

Respecting a state court's determinations of fact, this court must presume that they are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.* The presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000), *cert. denied,* 531 U.S. 1084 (2001).

## III. DISCUSSION

In his petition, Vickers articulates the following claims for relief:
(1) His sentence of eight years imprisonment, suspended after five years for one year at a halfway house followed by three years probation, is illegal.[FN1]

> FN1. Vickers mentions this claim briefly in his reply, not in his original petition. (D.I. 15 at 1.) Because Vickers is proceeding pro se, the court reads his submissions liberally in an effort to provide review of his claims to the fullest extent permissible under federal habeas law.

(2) The Superior Court lacked jurisdiction because he did not waive his right to prosecution by indictment in violation of the Fifth and Sixth Amendments.
(3) Counsel rendered ineffective assistance in violation of the Sixth Amendment by failing to investigate, challenge the prosecution's evidence, subpoena defense witnesses, and follow his instructions.
*4 (4) The police illegally detained him for more than

six hours without charging him.
(5) He was denied the right to cross-examine the arresting officer.

(D.I. 2 at 5-6, D.I. 15 at 1.) The respondents assert that Vickers' first claim of an illegal sentence remains unexhausted. They acknowledge that Vickers exhausted his second and third claims by presenting them to the state courts in his postconviction proceedings, and ask the court to reject these claims on the merits. The respondents argue that Vickers' fourth claim is procedurally barred from federal habeas review because he failed to present it to the Delaware Supreme Court. They do not address Vickers' fifth claim. The court considers each of Vickers' claims in turn.[FN2]

> FN2. Also pending in this matter is Vickers' application in support of motion to proceed *in forma pauperis.* (D.I.12.) In his application, Vickers attests that he is not employed, has no cash, and owns no property of value. The court thus finds that Vickers is unable to pay the fees for this action, and will grant his motion to proceed *in forma pauperis.*

### A. Illegal Sentence

Vickers' first claim is that his sentence is illegal. Pursuant to the sentence order issued by the Superior Court:
The defendant is placed in the custody of the Department of Correction at Supervision Level 5 for a period of 8 years. After serving 5 years at Supervision Level 5, this sentenced is suspended for 1 year at Supervision Level 4-half-way house. Followed by 3 years at Supervision Level 3.

(D.I. 24, Sentence Order of July 24, 1998.) Although Vickers has failed to explain this claim, it appears that he believes that his sentence is illegal because the aggregate time, *i.e.,* five years Level 5, plus one year Level 4, plus three years Level 3, exceeds the eight-year sentence imposed. Obviously, Vickers' computation is correct. Whether that renders his sentence illegal, however, is a question that the court cannot consider at this time.

According to the respondents, Vickers has never presented his illegal sentence claim to the state courts. They acknowledge that Vickers filed two motions for reduction of sentence, but that neither alleged that the sentence was illegal. For this reason,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31107362 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

they assert that the court "is not authorized under the habeas statute to grant relief on the issue" because this claim is unexhausted. (D .I. 22 at 3.) In response, Vickers argues that he presented his illegal sentence claim to the state courts in his postconviction proceedings. Alternatively, he asks to withdraw this claim if the court deems it unexhausted. (D.I. 27 at 3.)

A review of Vickers' amended Rule 61 motion reveals that in the "Summary of Facts," he states the sentence imposed, then writes: "What at this time, I would like to bring to the courts [sic] attention would clearly appears [sic] to be that of an illegal sentence under the courts [sic] discretion." (D.I. 7, No. 431, 1999, Amended Motion at 2.) On appeal, Vickers asked the Delaware Supreme Court to treat his amended Rule 61 motion as his opening brief, a request which the court granted. (*Id.,* Letter of December 8, 1999 from Senior Court Clerk.) Neither the Superior Court nor the Delaware Supreme Court addressed whether the sentence is illegal.[FN3]

> FN3. It appears that the Superior Court may have recognized subsequently the internal inconsistency of its sentence order. In denying Vickers' Rule 61 motion, the Superior Court reported that "on July 24, 1998, [the Superior Court] sentenced Defendant to seven (7) years at Level 5, suspended after 4 years with 3 years probation at different levels." *Vickers,* 1999 WL 1427767 at *1. Plainly, the July 24, 1998 sentence order contained in the record before this court is not consistent with the sentence reported by the Superior Court in its postconviction order. Nothing in the Superior Court's order addresses why its recitation of Vickers' sentence differs from that set forth in the sentence order itself.

Unfortunately for Vickers, his reference to an illegal sentence in his postconviction submissions is insufficient to satisfy the exhaustion requirement. To satisfy the exhaustion requirement, a petitioner must fairly present each claim by submitting "[b]oth the legal theory and the facts supporting" each claim to the state courts. *Lesko v. Owens,* 881 F.2d 44, 50 (3d Cir.1989). Here, Vickers' passing reference in his summary of facts to an illegal sentence, without any explanation whatsoever, is simply insufficient to alert the state courts to his claim. Accordingly, the court agrees with the respondents that Vickers did not fairly present his illegal sentence claim to the state

courts.

**\*5** The next step of the analysis is to determine whether state court review of this claim is available to Vickers. Here, the respondents concede that Vickers may present his illegal sentence claim to the Superior Court in a motion for correction of sentence pursuant to Rule 35(a) of the Superior Court Rules of Criminal Procedure. (D.I. 22 at 2.) Under Rule 35(a), "The [Superior Court] may correct an illegal sentence at any time." Super. Ct. R.Crim. P. 35(a)(emphasis added). According to the Delaware Supreme Court, a sentence is illegal for purposes of Rule 35(a) if it is, *inter alia,* "internally contradictory." *Tatem v. State,* 787 A.2d 80, 81 (Del.2001); *Brittingham v. State,* 705 A.2d 577, 578 (Del.1998). Vickers' claim of an illegal sentence appears to fall squarely within this category. Accordingly, the court agrees with the respondents that Vickers may present his illegal sentence claim to the Superior Court in a Rule 35(a) motion for correction of sentence.

Upon reaching the conclusion that a petition contains an unexhausted claim, a federal court must either dismiss the petition in its entirety without prejudice for failure to exhaust, or extend to the petitioner the opportunity to withdraw the unexhausted claim and proceed on his remaining claims. *Lundy,* 455 U.S. at 520. In compliance with *Lundy,* the court has advised Vickers of his option "to delete any unexhausted claims, and proceed only on his exhausted claims." (D.I. 26 at 1-2.) The court has cautioned Vickers that "he risks forfeiting any federal habeas review of those deleted and unexhausted claims." (*Id.*) Being fully informed, Vickers has notified the court that he wishes to withdraw any unexhausted claims. (D.I. 27 at 3.)

For these reasons, the court finds that Vickers' claim of an illegal sentence remains unexhausted. The court also finds that Vickers has withdrawn this unexhausted claim after being fully advised by the court of the consequences for doing so. Accordingly, the court will not examine the merits of this claim.[FN4]

> FN4. The fact that this court may not review the merits of Vickers' unexhausted claim does not preclude him from seeking relief in the state courts. While the court refrains from expressing an opinion on the merits of Vickers' unexhausted claim, the court emphasizes that a Rule 35(a) motion for correction of an illegal sentence appears to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31107362 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

be the only available avenue for seeking relief as to this claim. Whether Vickers files such a motion is entirely his own decision.

## B. Jurisdiction of Superior Court-Involuntary Waiver of Indictment

Vickers' next claim is that the Superior Court lacked jurisdiction to try him because he did not voluntarily waive his right to be charged by grand jury indictment. The waiver of indictment submitted by his attorney, Vickers alleges, was fraudulent. The respondents correctly acknowledge that Vickers exhausted this claim by presenting it to the state courts in his postconviction proceedings. Because the state courts rejected Vickers' involuntary waiver of indictment claim on the merits, this court's review is limited to determining whether the state courts' decision either was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1); *Williams,* 529 U.S. at 412.

In rejecting Vickers' involuntary waiver claim, the Delaware Supreme Court wrote:
Vickers claims that his waiver of indictment was involuntary and that, as a result, the Superior Court lacked jurisdiction to consider his case. The record belies Vickers' assertion that his waiver of indictment was involuntary. The waiver of indictment form filed in the record clearly states that Vickers knowingly waived prosecution by indictment and consented to prosecution by information. The waiver of indictment form has Vickers' original signature on it as well as the signature of Vickers' counsel. The State's subsequent filing of an information served to properly establish the Superior Court's jurisdiction over the case against Vickers. Vickers' jurisdictional claim is without merit.

**\*6** *Vickers,* 2000 WL 140108 at \* \*1.

Regrettably, the court cannot examine independently the document on which the Delaware Supreme Court relied-neither of the parties has provided the court with a copy of the waiver of indictment form. Notwithstanding, this court must presume that the Delaware Supreme Court's findings of fact are correct. 28 U.S.C. § 2254(e)(1). Vickers bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.* He offers nothing more than his own allegation that the waiver of indictment was fraudulent. His self-serving statement falls far short of clear and convincing evidence sufficient to rebut the Delaware Supreme Court's

findings of fact.

In short, the court presumes that the waiver of indictment form in the state court record bears the signatures of both Vickers and his attorney. Vickers has failed to offer any evidence to rebut these findings or to establish that his waiver of indictment was involuntary. Accordingly, the court cannot conclude that the state courts' rejection of this claim is contrary to, or involved an unreasonable application of, federal law. Vickers' request for federal habeas relief as to this claim will be denied.

## C. Ineffective Assistance of Counsel

Vickers' next claim is based on ineffective assistance of counsel:
Counsel failed to investigate and develope [sic] mitigating evidence, that would have proven reasonable doubt. Counsel failed to challenge the prosecutions [sic] introductions of evidence. Counsel also neglected to subpoena defence [sic] witnesses that could have presented doubt in the case against him. Because counsel failed to follow the defendant's instructions, the defendant's defence [sic] was limited and counsels [sic] representation was totally lacking to the effect that amounted only to ineffective assistance.

(D.I.2, ¶ 12.B.) The respondents acknowledge that Vickers exhausted these claims by presenting them to the state courts in his postconviction proceedings. The Superior Court summarily dismissed Vickers' ineffective assistance claims as "vague and entirely conclusory." *Vickers,* 1999 WL 1427767 at \*3. The Delaware Supreme Court agreed. *Vickers,* 2000 WL 140180 at \* \*2.

In order to succeed on his claims of ineffective assistance of counsel, Vickers must satisfy the familiar two-prong test of *Strickland v. Washington,* 466 U.S. 668 (1984). He must show (1) that counsel's performance was deficient, and (2) prejudice, *i.e.,* a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 686, 694.

Vickers first alleges that counsel rendered ineffective assistance by failing to investigate. He asserts that the victim stated that he was robbed by a clean-shaven man with no scars and no jewelry. He alleges that the arrest photograph shows that he had a beard, a moustache, and a scar near his left eye, and that the prison intake inventory sheet reflects that he was

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31107362 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

wearing jewelry. If counsel had investigated, he argues, she would have discovered these facts and presented them as evidence of the victim's misidentification.

*7 The court is not persuaded by this argument. Vickers overlooks the fact that the victim was not the only one to identify Vickers. Wardwell and several officers also identified Vickers as the robber. Vickers has failed to explain how the outcome of his trial would have been different if counsel had discredited the victim's identification in light of the other evidence identifying Vickers as the robber.

Next, Vickers asserts that counsel rendered ineffective assistance by failing to object to the admission into evidence of the coat he was wearing, and by failing to request testing on hair and blood samples taken from the coat. He asserts that tests would demonstrate that the coat did not belong to him. He does not explain, however, why the coat should not have been admitted into evidence. In addition, he does not explain why a finding that the coat did not "belong" to him would have any effect on the outcome of the trial. The evidence adduced at trial established that Vickers was wearing the coat when he entered the arcade and took money from Farrow, and that he shed the coat while trying to flee.

Vickers next claims that counsel rendered ineffective assistance by failing to call Shavell Miller to testify. He does not describe Miller's proposed testimony. He also argues that counsel should have subpoenaed Ahmad Dorsey as a witness, but he fails to explain who Dorsey is or to described Dorsey's proposed testimony.

Vickers' final claim of ineffective assistance is that counsel failed to follow his instructions. He asserts in a conclusory fashion that if counsel had followed his instructions, the outcome of the trial would have been different. His conclusory assertions, however, are insufficient to establish ineffective assistance of counsel.

For these reasons, the court finds that Vickers' allegations are inadequate to satisfy the *Strickland* standard. The court agrees with the state courts' characterization of these claims as conclusory. Accordingly, the court will deny Vickers' request for federal habeas relief as to his claims of ineffective assistance of counsel.

### D. Illegal Detention

Vickers next alleges that he was detained for more than six hours without being charged in violation of his rights under both the Fourth Amendment and Delaware law. The respondents assert that this claim is procedurally barred from federal habeas review.

The court need not determine whether Vickers' illegal detention claim is procedurally barred. According to the United States Supreme Court, a conviction cannot be vacated solely because a defendant was detained without a determination of probable cause in violation of the Fourth Amendment.[FN5] *Gerstein v. Pugh,* 420 U.S. 103, 119 (1975). Additionally, Vickers' claim based on a violation of his rights under state law is not cognizable on federal habeas review. *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Riley v. Harris,* 277 F.3d 261, 310 n. 8 (3d Cir.2001). For these reasons, and assuming the truth of Vickers' factual allegations, he has failed to state a claim for federal habeas relief.[FN6]

> FN5. The court does not suggest that Vickers was detained in violation of the Fourth Amendment. Judicial determinations of probable cause within 48 hours of arrest generally satisfy the Fourth Amendment. *County of Riverside v. McLaughlin,* 500 U.S. 44, 56 (1991).

> FN6. The court need not decide whether Vickers' Fourth Amendment claim is barred by *Stone v. Powell,* 428 U.S. 465 (1976). Under *Stone,* a federal court may not grant habeas relief to a state prisoner on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial, if the state provided an opportunity for full and fair litigation of the Fourth Amendment claim. *Deputy v. Taylor,* 19 F.3d 1485, 1491 (3d Cir.1994)(quoting *Stone,* 428 U.S. at 494). Here, Vickers does not allege that any evidence used against him was obtained in violation of the Fourth Amendment-thus, his Fourth Amendment claim is distinct from those typically barred by *Stone.* Even if Vickers' claim is not barred by *Stone,* it cannot provide a basis for federal habeas relief, as explained above.

### E. Right of Confrontation

*8 Vickers' final claim is that he was denied the right to cross-examine the officer who arrested him.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31107362 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

According to Vickers, conflicts arose in the witnesses' descriptions of the person who committed the crime. The arresting officer, in Vickers' words, "elected to be absent" and could not be "cross-examined" on this point. (D.I.2, ¶ 12.C.) The court views this claim as an allegation that Vickers was denied his right to confront witnesses in violation of the Sixth Amendment. The respondents have not addressed this claim.

Upon review of the state court records, the court cannot find that Vickers exhausted this claim. He did not raise it to the state courts, either on direct appeal or in postconviction proceedings. Because Vickers failed to fairly present this claim to the state courts, the court must determine whether state court review of this claim is now clearly foreclosed.

Two separate procedural impediments preclude Vickers from presenting his right to confront claim to the state courts. The first is Rule 61(i)(2):
Repetitive Motion. Any ground for relief that was not asserted in a prior postconviction proceeding, as required by subdivision (b)(2) of this rule, is thereafter barred, unless consideration of the claim is warranted in the interest of justice.

Super. Ct. R.Crim. P. 61(i)(2). In Delaware, a petitioner must present each of his grounds for relief in his initial Rule 61 motion.Super. Ct. R.Crim. P. 61(b)(2); *Robinson v. State,* 562 A.2d 1184, 1185 (Del.1989). Delaware courts refuse to consider any claim that was not asserted in an initial Rule 61 motion unless warranted in the interest of justice. *Maxion v. State,* 686 A.2d 148, 150 (Del.1996). In order to satisfy the interest of justice exception, a petitioner must show that "subsequent legal developments have revealed that the trial court lacked the authority to convict or punish" him. *Woods v. State,* No. 259, 1997, 1997 WL 425492 (Del. July 18, 1997)(citing *Flamer v. State,* 585 A.2d 736, 746 (Del.1990)). In the matter at hand, the record is devoid of any such subsequent legal developments. Accordingly, the court concludes that Rule 61(i)(2) clearly forecloses state court review of this claim in a second postconviction motion.

Even if Vickers could file a second motion for postconviction relief, his right to confront claim is procedurally barred by Rule 61(i)(3):
Procedural Default. Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows (A) Cause for relief from the procedural

default and (B) Prejudice from violation of the movant's rights.

Super. Ct. R.Crim. P. 61(i)(3). In Delaware, the failure to raise an issue on direct appeal generally renders a claim procedurally defaulted absent a showing of cause and prejudice. *See Bialach v. State,* 773 A.2d 383, 386 (Del.2001). Here, Vickers did not raise this claim on direct appeal, nor has he offered any explanation for his failure to do so.

**\*9** The only remaining question as to this claim is whether Vickers has offered any basis for excusing his procedural defaults. Although he alleges that counsel rendered ineffective assistance in a variety of ways, the court has concluded that his claims of ineffective assistance lack merit. Moreover, he does not specifically allege that appellate counsel rendered ineffective assistance by failing to raise this claim on direct appeal. In short, Vickers cannot rely on counsel's alleged ineffective assistance as cause for failing to present his claim to the state courts. In addition, Vickers does not argue that he is actually innocent for the purpose of excusing his procedural default.

For these reasons, the court finds that Vickers' right to confront claim is procedurally barred. Federal habeas review of this claim is unavailable.

### IV. CERTIFICATE OF APPEALABILITY

Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires the petitioner to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Here, the court has concluded that Vickers' claims do not provide a basis for granting federal habeas relief. The court is persuaded that reasonable jurists would not find its conclusions debatable or wrong. Vickers has, therefore, failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

### V. CONCLUSION

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31107362 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

For the foregoing reasons, IT IS HEREBY
ORDERED THAT:
1. Dontá E. Vickers' application to proceed *in forma
pauperis* (D.I.12) is GRANTED.
2. Vickers' petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254 (D.I.2) is DENIED.
3. The court declines to issue a certificate of
appealability for failure to satisfy the standard set
forth in 28 U.S.C. § 2253(c)(2).


IT IS SO ORDERED.

D.Del.,2002.
Vickers v. Delaware
Not Reported in F.Supp.2d, 2002 WL 31107362
(D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00CV00131 (Docket) (Feb. 29, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2006, I electronically filed an answer to a habeas

petition with the Clerk of Court using CM/ECF.  I also hereby certify that on December 21,

2006, I have mailed by United States Postal Service, the same documents to the following non-

registered participant:

    Mustafa A. Whitfield
    SBI No. 317479
    Delaware Correctional Center
    1181 Paddock Road
    Smyrna, DE 19977

    /s/ Elizabeth R. McFarlan
    Deputy Attorney General
    Department of Justice
    820 N. French Street
    Wilmington, DE 19801
    (302) 577-8500
    Del. Bar. ID No. 3759
    elizabeth.mcfarlan@state.de.us