**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MUSTAFA A. WHITFIELD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 06-137-GMS |
| | ) | |
| PERRY PHELPS, Warden, and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

Mustafa A. Whitfield. *Pro se* petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware. Attorney for respondents.

**MEMORANDUM OPINION**

_____ $\text{Mr.} \ 16$ _____, 2008
Wilmington, Delaware

---

[1]Warden Perry Phelps assumed office in January, 2008, replacing Warden Thomas
Carroll, an original party to this case. *See* Fed. R. Civ. P. 25(d)(1).



Sleet, Chief Judge

## I. INTRODUCTION

Petitioner Mustafa A. Whitfield ("Whitfield") is an inmate at the Delaware Correctional

Center in Smyrna, Delaware. Whitfield filed the pending petition for a writ of habeas corpus

("petition") pursuant to 28 U.S.C. § 2254. (D.I. 2.) For the reasons that follow, the court will

dismiss his petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts leading to Whitfield's arrest and conviction are as follows:

Anthony Meek arrived home at about 11:30 p.m. on October 14, 2002. He parked his
Chevy Cavalier behind his house. While parking the car, Meek noticed three black males
walking around the corner heading toward him. Two of the males had something
wrapped around their faces.

The three men came around the front of Meek's car while he was getting out of it. One of
the men, the one without anything covering his face, was holding a black semiautomatic
handgun. The gunman told Meek to "Give up the keys."

When Meek began arguing, the gunman told one of the other men to grab the keys. Meek
was holding the keys in his hand. As the man grabbed for the keys, Meek wrapped his
arm around the man's neck and a struggle ensued. Meek tripped and the two of them fell
back on the curb. The third assailant tried to pull his companion off of Meek while
telling the gunman to shoot. The gunman fired toward Meek and the three would-be
robbers took off running.

Meek began to chase his assailants. As they were running down the street, the gunman
turned and fired at Meek again. Meek immediately felt pain in his foot and gave up the
chase. Meek was subsequently treated at the hospital for a gunshot wound to his foot.

At about 11:50 p.m., two Wilmington police officers spotted three black males running a
few blocks away. As the police approached to question the men, two of them jumped
over a six-foot high brick wall and ran away. The third man, Akeem Coleman, was
stopped and a black 9 mm handgun was retrieved from the sidewalk near where Coleman
was taken into custody. The shell casings found near Meek's car were later shown to
have been fired by that gun.

1

> About five to ten minutes after Coleman was taken into custody, police saw two black men, one without a shirt, walking toward an apartment complex a few blocks from where the men had gone over the wall. Believing it odd that the men were not wearing coats in the cold weather and were sweating, the police suspected that these were the two men who had fled. The police stopped the two men who were [later] identified as Mustafa Whitfield and Emmanuel Robinson. A white t-shirt found near Meek's car contained DNA that matched that of Robinson.

*Whitfield*, 867 A.2d 168, 170-71 (Del. 2005).

Whitfield, Coleman, and Robinson were arrested and subsequently indicted on charges of attempted first degree robbery, three counts of possession of a firearm during the commission of a felony ("PFDCF"), second degree assault, first degree reckless endangering, wearing a disguise during the commission of a felony (not Coleman), second degree conspiracy, and possession of a deadly weapon by a person prohibited ("PDWBPP"). A joint jury trial commenced in January 2004, with each defendant represented by his own appointed attorney. Coleman and Robinson did not testify during the trial. However, Whitfield testified in his own defense, explaining that he was on his way to meet a girl at an apartment building near the location of his detention. According to Whitfield, he ran into Robinson shortly before being approached by the police. On February 6, 2004, the jury convicted Whitfield and his two co-defendants of attempted first degree robbery, second degree assault, two counts of PFDCF, first degree reckless endangering, wearing a disguise during the commission of a felony, and second degree conspiracy second. The jury acquitted all three of PDWBPP and one count of PFDCF. The Superior Court sentenced Whitfield to twenty-four years in prison, suspended after eleven years for decreasing levels of supervision. The Delaware Supreme Court affirmed Whitfield's convictions and sentences on direct appeal. *Id.*

In March 2005, acting *pro se,* Whitfield filed a motion for post-conviction relief pursuant

2

to Delaware Superior Court Criminal Rule 61, arguing that: (1) his arrest was illegal due to identification issues; and (2) the police violated his Fourth Amendment rights because they lacked probable cause to seize and arrest him. (D.I. 21, Motion for Postconviction Relief.) The Superior Court summarily dismissed the motion as previously adjudicated pursuant to Rule 61(i)(4) because the same issues were addressed during Whitfield's direct appeal. (D.I. 21, *State v. Whitfield*, Crim ID No. 0210009174, Order (June 27, 2005)). The Superior Court also denied the issues as frivolous. *Id.* Whitfield appealed that judgment, asserting the same two claims raised in his Rule 61 motion, along with a third claim that the prosecutors knew that the police lacked probable cause to arrest him and also that the prosecutors failed to investigate the case against him. (D.I. 25.) The Delaware Supreme Court affirmed the Superior Court's decision, specifically stating that the Superior Court did not err in concluding Whitfield's Rule 61 motion was without substantive merit. The Delaware Supreme Court also held that Whitfield's Rule 61 motion was barred as previously adjudicated under Rule 61(i)(4) . *Whitfield*, 2005 WL 3439710.

Whitfield timely filed the instant § 2254 application. (D.I. 1.) The State filed an answer, and Whitfield filed a Response. (D.I. 15; D.I. 18.) Whitfield's petition is ready for review.

## III.  GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

3

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the
>    applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at

844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the

exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the

state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v.*

4

*Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL

1897290, at *2 (D. Del. Dec. 22, 2000). "'Fair presentation' of a claim means that the petitioner

'must present a federal claim's factual and legal substance to the state courts in a manner that

puts them on notice that a federal claim is being asserted.'" *Holloway v. Horn*, 355 F.3d 707,

714 (3d Cir. 2004)(citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules

preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d

Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S.

288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines,*

208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to

comply with an independent and adequate state procedural rule, the claims are deemed exhausted

but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the

petitioner demonstrates either cause for the procedural default and actual prejudice resulting

therefrom, or that a fundamental miscarriage of justice will result if the court does not review the

claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501

U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate

cause for a procedural default, a petitioner must show that "some objective factor external to the

defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v.*

*Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing

"not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to

his actual and substantial disadvantage, infecting his entire trial with error of constitutional

5

dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir.

6

2004)(internal citations omitted), *rev'd on other grounds by Rompilla v. Beard*, 545 U.S. 374
(2005).

When reviewing a § 2254 petition, a federal court must presume the state court's
determinations of factual issues are correct, unless the petitioner presents clear and convincing
evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341
(2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues,
whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This
presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v.
Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Whitfield asserts the following three grounds for relief: (1) his arrest and subsequent
conviction were illegal because the police officers falsely stated in the warrant application that
they positively identified Whitfield as a suspect; (2) Robinson's DNA was illegally obtained and
should have been suppressed because the warrant contained false statements regarding
Whitfield's connection to the crime; and (3) the prosecutor improperly prosecuted Whitfield
because there was insufficient evidence of Whitfield's involvement in the crime and the
prosecutor knew that the police reports contained false information and false identifications.
(D.I. 2.).

### A. Claims one and two: Fourth Amendment violations

Claims one and two, which are premised on Whitfield's argument that evidence obtained
during his arrest should have been suppressed because the police knowingly included false

information in the warrant application, constitute Fourth Amendment claims.[2] *See*, *e.g.*, *Franks*

*v. Delaware*, 438 U.S. 154 (1978). Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976),

federal courts cannot provide habeas review of Fourth Amendment claims if the petitioner had a

full and fair opportunity to litigate Fourth Amendment claims in the state courts. *See Wright v.*

*West*, 505 U.S. 277, 293 (1992)("We have also held . . . that claims under *Mapp* [alleging

evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long

as the courts have provided a full and fair opportunity to litigate them at trial or on direct

review."). A petitioner has had a full and fair opportunity to litigate such claims if the state has

an available mechanism for suppressing evidence seized in or tainted by an illegal search or

seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See*

*U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Boyd v. Mintz*, 631 F.2d 247, 250

(3d Cir. 1980); *Petillo v. New Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977). Conversely, a

petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and

therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the

state from fully and fairly hearing his Fourth Amendment claims. *Marshall v. Hendricks*, 307

F.3d 36, 82 (3d Cir. 2002).

     In this case, the court concludes that Whitfield had a full and fair opportunity to litigate

his Fourth Amendment claims. As an initial matter, Delaware's system does not contain a

structural defect that prevented Whitfield from litigating the issues raised in claims one and two;

---

[2]The court rejects Whitfield's argument (D.I. 18) that claim one does not assert a Fourth Amendment violation. *See Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)(holding that the "Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.")

8

Whitfield could have filed a motion to suppress the evidence pursuant to Rule 41 of the Delaware

Superior Court Rules of Criminal Procedures, but he chose not to do so.[3] Moreover, Whitfield

effectively raised the substantive Fourth Amendment issues in his direct appeal, in his Rule 61

proceeding, and in his post-conviction appeal, and the Delaware state courts denied the claims as

meritless. The fact that the Delaware state courts alternatively interpreted the two Fourth

Amendment claims as including a challenge to the sufficiency of the evidence does not suggest

that he did not receive a "full and fair litigation" of his Fourth Amendment issues. *See, e.g.,*

*Marshall v. Hendricks,* 307 F.3d 36, 82 (3d Cir. 2002)(whether or not a state court incorrectly

decided a petitioner's Fourth Amendment claim is immaterial to the full and fair opportunity

analysis). Accordingly, the court will deny Whitfield's two Fourth Amendment claims as barred

by *Stone*.

## B. Claim three

In claim three, Whitfield contends that the prosecutor knowingly used false police reports

to prepare the case against him, and that the prosecutor's opening argument improperly identified

Whitfield as one of the suspects.[4] *See* (D.I. 28.) These assertions are premised on Whitfield's

---

[3]The record reveals that Whitfield actually did file a motion to suppress. (D.I. 21, Del. Super. Ct. Dkt. at Entry Nos. 15, 26.) Although the court cannot definitively discern the evidence sought to be suppressed in that motion, it appears that the motion did not seek to suppress the evidence at issue in claims one and two of this proceeding; the Superior Court granted the motion on July 18, 2003, and the docket entry states "drug charges to be dropped." (D.I. 21, Del. Super. Ct. Dkt. at Entry No. 31.) If, however, the suppression motion did involve the issues presented in claims one and two, the motion provides further support for the court's conclusion that Delaware's system does not contain a structural defect.

[4]In his response to the State's answer, Whitfield also asserts a malicious prosecution claim. (D.I. 18) An allegation of malicious prosecution is properly asserted pursuant to 42 U.S.C. § 1983, not 28 U.S.C. § 2254. Whitfield presented the same malicious prosecution claim in a § 1983 proceeding brought before this court, and the court granted the defendant's motion

9

argument that the police wrongly identified him as one of the three individuals involved in the

crimes. The State construes the claim as a challenge to the sufficiency of the evidence presented

to the grand jury, and argues that claim three does not present an issue cognizable on federal

habeas review. The court disagrees with the State's interpretation,[5] and instead, construes claim

three as asserting two arguments: (1) there was insufficient identification evidence to support

Whitfield's conviction because the evidence was circumstantial in nature; and (2) the prosecutor

knew about the misidentification and, therefore, improperly identified Whitfield as one of the

suspects during his opening argument. The court will review these contentions in seriatim.

### 1. Insufficient evidence

Although Whitfield did not explicitly raise the issue of his "misidentification" as an

insufficient evidence issue on direct appeal, the Delaware Supreme Court held that there was

"sufficient evidence to support each of the charges of which the jury convicted Whitfield."

*Whitfield*, 867 A.2d 168, 176 (Del. 2004). Accordingly, the court will review the insufficient

evidence claim under the deferential standard contained in § 2254(d)(1) to determine if the

Delaware Supreme Court's decision was either contrary to, or an unreasonable application of,

clearly established Supreme Court precedent.[6]

_____

for summary judgment on the issue. *See* (D.I. 20 in *Whitfield v. Wilmington Police Department*, Civ. A. No. 06-541-GMS) Therefore, the court will not address any allegation of malicious prosecution in this case.

[5]Interestingly, the State's Answering Brief in Whitfield's post-conviction appeal explicitly acknowledges that Whitfield was challenging the sufficiency of the evidence supporting his convictions. (D.I. 25, State's Ans. Br. in *Whitfield v. State*, No.327,2005.)

[6]The court acknowledges that Whitfield's failure to raise the insufficient evidence claim on direct appeal would normally effectuate a procedural default, barring federal review of the claim absent a showing of cause and prejudice. However, the exhaustion and procedural default

The clearly established federal law for insufficient evidence claims is the rule articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to *Jackson*, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. A jury's verdict may be based entirely on circumstantial evidence, so long as the *Jackson* standard is satisfied and the jury is convinced of the defendant's guilt beyond a reasonable doubt. *See Desert Palace Inc. v. Costa,* 539 U.S. 90, 100 (2003); *Holland v. United States*, 348 U.S. 121, 140 (1954). Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting interests must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

On direct appeal, the Delaware Supreme Court held that Whitfield's convictions would stand "despite their apparent inconsistency with the verdicts acquitting Whitfield on other charges" because "the State presented sufficient evidence to establish the basis for the crimes of which the jury found Whitfield guilty." *Whitfield*, 867 A.2d at 176. Further, during Whitfield's

_____

doctrines are founded on the principle of federal-state comity, requiring a petitioner "to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). In this case, although Whitfield did not raise the insufficient evidence claim on direct appeal, the Delaware Supreme Court did actually adjudicate the issue whether there was insufficient evidence to support Whitfield's convictions. Moreover, although the Delaware state courts denied the claim as procedurally barred during Whitfield's post-conviction proceedings, the state courts also denied the claim as meritless. Therefore, in these circumstances, the court will review the claim under § 2254(d)(1) instead of finding the claim procedurally barred from federal habeas review.

11

post-conviction appeal, the Delaware Supreme Court opined:

> The Superior Court noted that Whitfield's identity as one of the perpetrators was argued
> vigorously at trial. The Superior Court concluded that the circumstantial evidence that
> tied Whitfield to the crime was abundant and thus sufficient for the jury to find him guilty
> beyond a reasonable doubt. . . . [Therefore,] the Superior Court did not err in concluding
> that Whitfield's motion for postconviction relief was without substantive merit.

*Whitfield,* 2005 WL 3439710, at *1.

Having reviewed the record, the court cannot agree with the Delaware state courts'

conclusion that there was "abundant" circumstantial evidence linking Whitfield to the crime.

Nevertheless, viewing the evidence in the light most favorable to the State, the court concludes

that there was sufficient circumstantial evidence such that a rational trier of fact could have found

proof of guilt beyond a reasonable doubt. For instance, during Whitfield's trial, the victim

Meeks positively identified Coleman as the shooter. Although Meeks could not positively

identify Whitfield or Robinson because the other two individuals who assaulted him had covered

their faces, Meeks did describe the height and build of those two individuals, and he stated that

they were wearing dark clothing. The arresting police officers testified that they saw two people

running with Coleman seconds after the shooting, and that those two individuals jumped over a

fence. Although the officers did not see the faces of the two individuals who jumped over the

fence, they testified that the height and weight of the two individuals matched the height and

weight of Robinson and Whitfield. Moreover, both Robinson and Whitfield were out of breath

when apprehended by police five to ten minutes later, and Whitfield was wearing dark clothing at

the time of his arrest. Although Robinson was shirtless when apprehended by police, the white t-

shirt found near Meeks' car contained DNA matching Robinson's DNA.

Further, even though Whitfield testified that he did not participate in the crime and that he

12

only ran into Robinson by chance while on his way to visit a girl in an apartment building just

before the police apprehended them, one of the arresting police officers testified that Whitfield's

story regarding the girl in the apartment building conflicted with Robinson's story. The jury's

verdict indicates that it found the circumstantial evidence linking Whitfield to the crime more

credible than Whitfield's version of events, and the court must defer to the jury's credibility

determination. Therefore, the court concludes that the Delaware Supreme Court's decision that

there was sufficient evidence to sustain Whitfield's conviction was neither contrary to, nor an

unreasonable application of, *Jackson*. Accordingly, Whitfield is not entitled to habeas relief to

the extent claim three alleges there was insufficient evidence to support his conviction.

## 2. Prosecutorial misconduct due to improper opening statement

The prosecutor made the following statements during his opening argument:

[Officers] Derbyshire and Prado will tell you two of the defendants, Mustafa Whitfield
and Emmanuel Robinson, jumped a brick wall that surrounds St. Peter's Roman Catholic
church here. . . . Patrolman Prado ends up going over the wall, coming back out on Sixth
Street, looks south on Tatnall and sees Whitfield and Robinson, the other two defendants,
together down that way. He recognizes them as the same two guys who had jumped over
the wall at the church. He confronts them or they actually catch up to him at an
apartment complex in the 200-block of Fifth Street and they stopped.

(D.I. 21, Motion for Postconviction Relief, Transcript at pp. 7-8.) Whitfield contends that the

prosecutor's identification of him by name was improper because the police officers testified that

they did not see the faces of the two suspects as they were running. The record reveals that

Whitfield presented his prosecutorial misconduct claim to the Delaware Supreme Court on post-

conviction appeal, but the Delaware Supreme court did not address the claim on its merits.[7] *See*

_____

[7]In his post-conviction appellate brief, Whitfield stated: The prosecution said Officers
Matthew Derbyshire and David Prado will testify to seeing Mustafa Whitfield and Emmanual
Robinson jumping over a brick wall. The State said Prado recognized Whitfield and Robinson as

13

(D.I. 25, Appellant's Reply Br. in *Whitfield v. State*, No.327,2005, at pp.7-8.) Therefore, the

court will apply the pre-AEDPA standard and review the prosecutorial misconduct claim *de

novo*.[8] *See Holloway v. Horn*, 355 F.3d 707, 718-19 (3d Cir. 2004).

In order for a prosecutorial misconduct claim to warrant federal habeas relief, the

prosecutor's comments must have "so infected the trial with unfairness as to make the resulting

conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986)(citing

*Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). Moreover, "[i]f an opening statement is an

objective summary of evidence the government reasonably expects to produce, a subsequent

failure in proof will not necessarily result in a mistrial." *United States v. Retos*, 25 F.3d 1220,

1226 (3d Cir. 1994)(internal citation omitted).

In this case, the prosecutor's statements identifying Whitfield as a suspect did not deprive

Whitfield of a fair trial. For example, during the same opening argument, the prosecutor

highlighted the circumstantial nature of the evidence by stating:

> There were two other individuals with [Coleman]. . . . So another defendant - - **and the
> State suggests the evidence will at least substantially show that the defendant is
> Mustafa Whitfield** with the reddish type sweatshirt on, is standing there. And the
> evidence will also show that Emmanuel Robinson, the defendant in the back row,
> grabbed the keys in Anthony Meek's hand.

(D.I. 21, Motion for Postconviction Relief, Transcript at p. 5.) (emphasis added) Further, when

viewed in context with the entire trial, the prosecutor's statements were part of an "objective

---

the suspects. Neither Derbyshire or Prado said they saw Whitfield and Robinson, nor did they
recognize them as suspects. (D.I. 25, Appellant's Op. Br. in *Whitfield v. State*, No.327,2005,
dated July 20, 2005 at p. 8-9.)

[8]*De novo* review means that the court "must exercise its independent judgment when
deciding both questions of constitutional law and mixed constitutional questions." *Williams v.
Taylor*, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring).

summary" of the evidence he expected to produce. The identity of the two suspects seen running with Coleman was the primary focus of the trial. Both the prosecutor and defense counsel spent a significant amount of time questioning Meek about the description of the two "masked" suspects he gave to the police after the crime, and both attorneys also significantly questioned the police officers regarding their conclusions that Robinson and Whitfield were actually the two suspects they saw running with Coleman. And, as just explained, the State did not fail in providing sufficient evidence of Whitfield's involvement in the crime. Accordingly, the court concludes Whitfield's prosecutorial misconduct claim does not warrant habeas relief.

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that Whitfield's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court

15

declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Whitfield's petition for habeas relief pursuant to 28 U.S.C. § 2254

will be denied.  An appropriate order shall issue.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MUSTAFA A. WHITFIELD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. A. No. 06-137-GMS |
| | ) |
| PERRY PHELPS, Warden, and | ) |
| ATTORNEY GENERAL OF THE | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Mustafa A. Whitfield's petition for the writ of habeas corpus filed pursuant to 28

U.S.C § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I. 1.)

2. The court declines to issue a certificate of appealability due to Whitfield's failure to

satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

Dated: _____ , 2008

_____
CHIEF, UNITED STATES DISTRICT JUDGE

FILED

APR 1 6 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE