IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MUSTAFA A. WHITFIELD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 06-137-GMS |
| | ) | |
| PERRY PHELPS, Warden, and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

_____

Mustafa A. Whitfield. *Pro se* petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for respondents.

_____

**AMENDED MEMORANDUM OPINION\*\***

March 16, 2009
Wilmington, Delaware

Case 1:06-cv-00137-GMS   Document 36   Filed 03/16/09   Page 2 of 18 PageID #: 235


Sleet, Chief Judge

## I. INTRODUCTION

Petitioner Mustafa A. Whitfield ("Whitfield") is an inmate at the Delaware Correctional Center in Smyrna, Delaware. Whitfield filed the pending petition for a writ of habeas corpus ("petition") pursuant to 28 U.S.C. § 2254. (D.I. 2.) For the reasons that follow, the court will dismiss his petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts leading to Whitfield's arrest and conviction are as follows:

Anthony Meek arrived home at about 11:30 p.m. on October 14, 2002. He parked his Chevy Cavalier behind his house. While parking the car, Meek noticed three black males walking around the corner heading toward him. Two of the males had something wrapped around their faces.

The three men came around the front of Meek's car while he was getting out of it. One of the men, the one without anything covering his face, was holding a black semiautomatic handgun. The gunman told Meek to "Give up the keys."

When Meek began arguing, the gunman told one of the other men to grab the keys. Meek was holding the keys in his hand. As the man grabbed for the keys, Meek wrapped his arm around the man's neck and a struggle ensued. Meek tripped and the two of them fell back on the curb. The third assailant tried to pull his companion off of Meek while telling the gunman to shoot. The gunman fired toward Meek and the three would-be robbers took off running.

Meek began to chase his assailants. As they were running down the street, the gunman turned and fired at Meek again. Meek immediately felt pain in his foot and gave up the chase. Meek was subsequently treated at the hospital for a gunshot wound to his foot.

At about 11:50 p.m., two Wilmington police officers spotted three black males running a few blocks away. As the police approached to question the men, two of them jumped over a six-foot high brick wall and ran away. The third man, Akeem Coleman, was stopped and a black 9 mm handgun was retrieved from the sidewalk near where Coleman was taken into custody. The shell casings found near Meek's car were later shown to have been fired by that gun.

1

> About five to ten minutes after Coleman was taken into custody, police saw two black men, one without a shirt, walking toward an apartment complex a few blocks from where the men had gone over the wall. Believing it odd that the men were not wearing coats in the cold weather and were sweating, the police suspected that these were the two men who had fled. The police stopped the two men who were [later] identified as Mustafa Whitfield and Emmanuel Robinson. A white t-shirt found near Meek's car contained DNA that matched that of Robinson.

*Whitfield*, 867 A.2d 168, 170-71 (Del. 2005).

Whitfield, Coleman, and Robinson were arrested and subsequently indicted on charges of attempted first degree robbery, three counts of possession of a firearm during the commission of a felony ("PFDCF"), second degree assault, first degree reckless endangering, wearing a disguise during the commission of a felony (not Coleman), second degree conspiracy, and possession of a deadly weapon by a person prohibited ("PDWBPP"). A joint jury trial commenced in January 2004, with each defendant represented by his own appointed attorney. Coleman and Robinson did not testify during the trial. However, Whitfield testified in his own defense, explaining that he was on his way to meet a girl at an apartment building near the location of his detention. According to Whitfield, he ran into Robinson shortly before being approached by the police. On February 6, 2004, the jury convicted Whitfield and his two co-defendants of attempted first degree robbery, second degree assault, two counts of PFDCF, first degree reckless endangering, wearing a disguise during the commission of a felony, and second degree conspiracy second. The jury acquitted all three of PDWBPP and one count of PFDCF. The Superior Court sentenced Whitfield to twenty-four years in prison, suspended after eleven years for decreasing levels of supervision. The Delaware Supreme Court affirmed Whitfield's convictions and sentences on direct appeal. *Id.*

In March 2005, acting *pro se,* Whitfield filed a motion for post-conviction relief pursuant

2

to Delaware Superior Court Criminal Rule 61, arguing that: (1) his arrest was illegal due to identification issues; and (2) the police violated his Fourth Amendment rights because they lacked probable cause to seize and arrest him. (D.I. 21, Motion for Postconviction Relief.) The Superior Court summarily dismissed the motion as previously adjudicated pursuant to Rule 61(i)(4) because the same issues were addressed during Whitfield's direct appeal. (D.I. 21, *State v. Whitfield*, Crim ID No. 0210009174, Order (June 27, 2005)). The Superior Court also denied the issues as frivolous. *Id.* Whitfield appealed that judgment, asserting the same two claims raised in his Rule 61 motion, along with a third claim that the prosecutors knew that the police lacked probable cause to arrest him and also that the prosecutors failed to investigate the case against him. (D.I. 25.) The Delaware Supreme Court affirmed the Superior Court's decision, specifically stating that the Superior Court did not err in concluding Whitfield's Rule 61 motion was without substantive merit. The Delaware Supreme Court also held that Whitfield's Rule 61 motion was barred as previously adjudicated under Rule 61(i)(4) . *Whitfield*, 2005 WL 3439710.

Whitfield timely filed the instant § 2254 application. (D.I. 1.) The State filed an answer, and Whitfield filed a Response. (D.I. 15; D.I. 18.) Whitfield's petition is ready for review.

### III. GOVERNING LEGAL PRINCIPLES

#### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v.*

4

*Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines,* 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts,* 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional

5

dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir.

2004)(internal citations omitted), *rev'd on other grounds by Rompilla v. Beard*, 545 U.S. 374 (2005).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Whitfield asserts the following three grounds for relief: (1) his arrest and subsequent conviction were illegal because the police officers falsely stated in the warrant application that they positively identified Whitfield as a suspect; (2) Robinson's DNA was illegally obtained and should have been suppressed because the warrant contained false statements regarding Whitfield's connection to the crime; and (3) the prosecutor improperly prosecuted Whitfield because there was insufficient evidence of Whitfield's involvement in the crime and the prosecutor knew that the police reports contained false information and false identifications. (D.I. 2.).

### A. Claims one and two: Fourth Amendment violations

Claims one and two, which are premised on Whitfield's argument that evidence obtained during his arrest should have been suppressed because the police knowingly included false

information in the warrant application, constitute Fourth Amendment claims.[1] *See, e.g.*, *Franks v. Delaware*, 438 U.S. 154 (1978). Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), federal courts cannot provide habeas review of Fourth Amendment claims if the petitioner had a full and fair opportunity to litigate Fourth Amendment claims in the state courts. *See Wright v. West*, 505 U.S. 277, 293 (1992)("We have also held . . . that claims under *Mapp* [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review."). A petitioner has had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980); *Petillo v. New Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment claims. *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

In this case, the court concludes that Whitfield had a full and fair opportunity to litigate his Fourth Amendment claims. As an initial matter, Delaware's system does not contain a structural defect that prevented Whitfield from litigating the issues raised in claims one and two;

---

[1] The court rejects Whitfield's argument (D.I. 18) that claim one does not assert a Fourth Amendment violation. *See Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)(holding that the "Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.")

Whitfield could have filed a motion to suppress the evidence pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedures, but he chose not to do so.[2] Moreover, Whitfield effectively raised the substantive Fourth Amendment issues in his direct appeal, in his Rule 61 proceeding, and in his post-conviction appeal, and the Delaware state courts denied the claims as meritless. The fact that the Delaware state courts alternatively interpreted the two Fourth Amendment claims as including a challenge to the sufficiency of the evidence does not suggest that he did not receive a "full and fair litigation" of his Fourth Amendment issues. *See, e.g., Marshall v. Hendricks,* 307 F.3d 36, 82 (3d Cir. 2002)(whether or not a state court incorrectly decided a petitioner's Fourth Amendment claim is immaterial to the full and fair opportunity analysis). Accordingly, the court will deny Whitfield's two Fourth Amendment claims as barred by *Stone*.

### B. Claim three

In claim three, Whitfield contends that the prosecutor knowingly used false police reports to prepare the case against him, and that the prosecutor's opening argument improperly identified Whitfield as one of the suspects.[3] *See* (D.I. 28.) These assertions are premised on Whitfield's

---

[2]The record reveals that Whitfield actually did file a motion to suppress. (D.I. 21, Del. Super. Ct. Dkt. at Entry Nos. 15, 26.) Although the court cannot definitively discern the evidence sought to be suppressed in that motion, it appears that the motion did not seek to suppress the evidence at issue in claims one and two of this proceeding; the Superior Court granted the motion on July 18, 2003, and the docket entry states "drug charges to be dropped." (D.I. 21, Del. Super. Ct. Dkt. at Entry No. 31.) If, however, the suppression motion did involve the issues presented in claims one and two, the motion provides further support for the court's conclusion that Delaware's system does not contain a structural defect.

[3]In his response to the State's answer, Whitfield also asserts a malicious prosecution claim. (D.I. 18) An allegation of malicious prosecution is properly asserted pursuant to 42 U.S.C. § 1983, not 28 U.S.C. § 2254. Whitfield presented the same malicious prosecution claim in a § 1983 proceeding brought before this court, and the court granted the defendant's motion

argument that the police wrongly identified him as one of the three individuals involved in the crimes. The State construes the claim as a challenge to the sufficiency of the evidence presented to the grand jury, and argues that claim three does not present an issue cognizable on federal habeas review. The court disagrees with the State's interpretation **to the extent it is limited to this one issue,**[4] and instead, construes claim three as asserting **three** arguments: (1) **Whitfield was indicted on allegedly false information provided by the police officers;** (2) there was insufficient identification evidence to support Whitfield's conviction because the evidence was circumstantial in nature; and (3) the prosecutor knew about the misidentification and, therefore, improperly identified Whitfield as one of the suspects during his opening argument. The court will review these contentions in seriatim.

### **1. Insufficient evidence to indict**

A defendant is not entitled to challenge an indictment on the ground that it is not supported by adequate or competent evidence. *United States v. Calandra*, 414 U.S. 338, 344-45 (1974). As explained by the Supreme Court in *United States v. Mechanik*, 475 U.S. 66, 70-72 (1986), "the petit jury's guilty verdict render[s] any prosecutorial misconduct before the indicting grand jury harmless." *United States v. Mechanik*, 475 U.S. 66, 70-72 (1986). In short, there is no federal constitutional due process requirement that requires dismissal of an indictment due to the presentation of incompetent evidence to a grand jury. *See Costello v. United States*, 350 U.S.

---

for summary judgment on the issue. *See* (D.I. 20 in *Whitfield v. Wilmington Police Department*, Civ. A. No. 06-541-GMS) Therefore, the court will not address any allegation of malicious prosecution in this case.

[4]Interestingly, the State's Answering Brief in Whitfield's post-conviction appeal explicitly acknowledges that Whitfield was challenging the sufficiency of the evidence supporting his convictions. (D.I. 25, State's Ans. Br. in *Whitfield v. State*, No.327,2005.)

359, 408-09 (1956)("An indictment returned by a legally constituted and unbiased jury . . ., if valid on its face, is enough to call for trial of the charges on the merits. The Fifth Amendment requires nothing more."). Accordingly, the court will deny this portion of claim three because it fails to assert a proper basis for federal habeas relief.**

### 2. Insufficient evidence **to convict**

Although Whitfield did not explicitly raise the issue of his "misidentification" as an insufficient evidence issue on direct appeal, the Delaware Supreme Court held that there was "sufficient evidence to support each of the charges of which the jury convicted Whitfield." *Whitfield*, 867 A.2d 168, 176 (Del. 2004). Accordingly, the court will review the insufficient evidence claim under the deferential standard contained in § 2254(d)(1) to determine if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.[5]

The clearly established federal law for insufficient evidence claims is the rule articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to

---

[5] The court acknowledges that Whitfield's failure to raise the insufficient evidence claim on direct appeal would normally effectuate a procedural default, barring federal review of the claim absent a showing of cause and prejudice. However, the exhaustion and procedural default doctrines are founded on the principle of federal-state comity, requiring a petitioner "to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). In this case, although Whitfield did not raise the insufficient evidence claim on direct appeal, the Delaware Supreme Court did actually **determine that** there was sufficient evidence to support Whitfield's convictions **when it denied Whitfield's claim regarding inconsistent verdicts.** Moreover, although the Delaware state courts denied the claim as procedurally barred during Whitfield's post-conviction proceedings, the **claim was barred for being previously adjudicated under Rule 61(i)(4), not for failing to raise the claim on direct appeal (Rule 61(i)(3)).** Therefore, in these circumstances, the court will review the claim under § 2254(d)(1) instead of finding the claim procedurally barred from federal habeas review.

11

*Jackson*, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. A jury's verdict may be based entirely on circumstantial evidence, so long as the *Jackson* standard is satisfied and the jury is convinced of the defendant's guilt beyond a reasonable doubt. *See Desert Palace Inc. v. Costa,* 539 U.S. 90, 100 (2003); *Holland v. United States*, 348 U.S. 121, 140 (1954). Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting interests must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

On direct appeal, the Delaware Supreme Court held that Whitfield's convictions would stand "despite their apparent inconsistency with the verdicts acquitting Whitfield on other charges" because "the State presented sufficient evidence to establish the basis for the crimes of which the jury found Whitfield guilty." *Whitfield*, 867 A.2d at 176. Further, during Whitfield's post-conviction appeal, the Delaware Supreme Court opined:

> The Superior Court noted that Whitfield's identity as one of the perpetrators was argued vigorously at trial. The Superior Court concluded that the circumstantial evidence that tied Whitfield to the crime was abundant and thus sufficient for the jury to find him guilty beyond a reasonable doubt. . . . [Therefore,] the Superior Court did not err in concluding that Whitfield's motion for postconviction relief was without substantive merit.

*Whitfield,* 2005 WL 3439710, at *1.

Having reviewed the record, the court cannot agree with the Delaware state courts' conclusion that there was "abundant" circumstantial evidence linking Whitfield to the crime. Nevertheless, viewing the evidence in the light most favorable to the State, the court concludes

that there was sufficient circumstantial evidence such that a rational trier of fact could have found proof of guilt beyond a reasonable doubt. For instance, during Whitfield's trial, the victim Meeks positively identified Coleman as the shooter. Although Meeks could not positively identify Whitfield or Robinson because the other two individuals who assaulted him had covered their faces, Meeks did describe the height and build of those two individuals, and he stated that they were wearing dark clothing. The arresting police officers testified that they saw two people running with Coleman seconds after the shooting, and that those two individuals jumped over a fence. Although the officers did not see the faces of the two individuals who jumped over the fence, they testified that the height and weight of the two individuals matched the height and weight of Robinson and Whitfield. Moreover, both Robinson and Whitfield were out of breath when apprehended by police five to ten minutes later, and Whitfield was wearing dark clothing at the time of his arrest. Although Robinson was shirtless when apprehended by police, the white t-shirt found near Meeks' car contained DNA matching Robinson's DNA.

Further, even though Whitfield testified that he did not participate in the crime and that he only ran into Robinson by chance while on his way to visit a girl in an apartment building just before the police apprehended them, one of the arresting police officers testified that Whitfield's story regarding the girl in the apartment building conflicted with Robinson's story. The jury's verdict indicates that it found the circumstantial evidence linking Whitfield to the crime more credible than Whitfield's version of events, and the court must defer to the jury's credibility determination. Therefore, the court concludes that the Delaware Supreme Court's decision that there was sufficient evidence to sustain Whitfield's conviction was neither contrary to, nor an unreasonable application of, *Jackson*. Accordingly, Whitfield is not entitled to habeas relief to

the extent claim three alleges there was insufficient evidence to support his conviction.

### 3. Prosecutorial misconduct due to improper opening statement

The prosecutor made the following statements during his opening argument:

> [Officers] Derbyshire and Prado will tell you two of the defendants, Mustafa Whitfield and Emmanuel Robinson, jumped a brick wall that surrounds St. Peter's Roman Catholic church here. . . . Patrolman Prado ends up going over the wall, coming back out on Sixth Street, looks south on Tatnall and sees Whitfield and Robinson, the other two defendants, together down that way. He recognizes them as the same two guys who had jumped over the wall at the church. He confronts them or they actually catch up to him at an apartment complex in the 200-block of Fifth Street and they stopped.

(D.I. 21, Motion for Postconviction Relief, Transcript at pp. 7-8.) Whitfield contends that the prosecutor's identification of him by name was improper because the police officers testified that they did not see the faces of the two suspects as they were running.

The record reveals that Whitfield presented his prosecutorial misconduct claim to the Delaware Supreme Court on post-conviction appeal, but the Delaware Supreme Court did not address the claim on its merits.[6] *See* (D.I. 25, Appellant's Reply Br. in *Whitfield v. State*, No.327,2005, at pp.7-8.)  **However, the record also reveals that Whitfield did not present his prosecutorial misconduct claim on direct appeal. In these circumstances, the instant claim is exhausted but procedurally defaulted,[7] and therefore, the court cannot review its merits absent a

---

[6] In his post-conviction appellate brief, Whitfield stated: The prosecution said Officers Matthew Derbyshire and David Prado will testify to seeing Mustafa Whitfield and Emmanual Robinson jumping over a brick wall. The State said Prado recognized Whitfield and Robinson as the suspects. Neither Derbyshire or Prado said they saw Whitfield and Robinson, nor did they recognize them as suspects. (D.I. 25, Appellant's Op. Br. in *Whitfield v. State*, No.327,2005, dated July 20, 2005 at p. 8-9.)

[7] Delaware Superior Court Criminal Rule 61(i)(3) would bar Whitfield from raising this claim in a new Rule 61 motion because he did not raise it on direct appeal. *See McLaughlin v. Carroll*, 270 F. Supp. 2d 490, 510-11 (D. Del. 2003).

14

showing of cause for, and prejudice resulting from, that default, or that a miscarriage of justice will occur in the absence of such review.

Whitfield does not assert any cause for his default. In the absence of cause, the court will not address the issue of prejudice.[8] Moreover, the miscarriage of justice exception to the default doctrine does not apply because Whitfield has not provided any colorable evidence of his actual innocence. Accordingly, the court will deny Whitfield's prosecutorial misconduct claim as procedurally barred.**

---

[8]Nevertheless, Whitfield cannot demonstrate prejudice because the claim lacks merit. In order for a prosecutorial misconduct claim to warrant federal habeas relief, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986)(citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). Moreover, "[i]f an opening statement is an objective summary of evidence the government reasonably expects to produce, a subsequent failure in proof will not necessarily result in a mistrial." *United States v. Retos*, 25 F.3d 1220, 1226 (3d Cir. 1994)(internal citation omitted).

In this case, the prosecutor's statements identifying Whitfield as a suspect did not deprive Whitfield of a fair trial. For example, during the same opening argument, the prosecutor highlighted the circumstantial nature of the evidence by stating:

> There were two other individuals with [Coleman]. . . . So another defendant - - **and the State suggests the evidence will at least substantially show that the defendant is Mustafa Whitfield** with the reddish type sweatshirt on, is standing there. And the evidence will also show that Emmanuel Robinson, the defendant in the back row, grabbed the keys in Anthony Meek's hand.

(D.I. 21, Motion for Postconviction Relief, Transcript at p. 5.) (emphasis added) Further, when viewed in context with the entire trial, the prosecutor's statements were part of an "objective summary" of the evidence he expected to produce. The identity of the two suspects seen running with Coleman was the primary focus of the trial. Both the prosecutor and defense counsel spent a significant amount of time questioning Meek about the description of the two "masked" suspects he gave to the police after the crime, and both attorneys also significantly questioned the police officers regarding their conclusions that Robinson and Whitfield were actually the two suspects they saw running with Coleman. And, as **previously** explained, the State did not fail in providing sufficient evidence of Whitfield's involvement in the crime. Accordingly, the Whitfield's prosecutorial misconduct claim is meritless.

15

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that Whitfield's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Whitfield's petition for habeas relief pursuant to 28 U.S.C. § 2254 will be denied. An appropriate order shall issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MUSTAFA A. WHITFIELD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 06-137-GMS |
| | ) | |
| PERRY PHELPS, Warden, and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER**

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

1. Mustafa A. Whitfield's petition for the writ of habeas corpus filed pursuant to 28 U.S.C § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I. 1.)

2. The court declines to issue a certificate of appealability due to Whitfield's failure to satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

Dated: March 16, 2009

CHIEF, UNITED STATES DISTRICT JUDGE